**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ANDY SHIN FONG CHEN AND AERO SPACE PORT INTERNATIONAL GROUP, INC. | **JURY TRIAL DEMANDED** |
| Defendants, and | |
| NORTH AMERICAN FOREIGN TRADE ZONE INDUSTRIES, LLC; WASHINGTON ECONOMIC DEVELOPMENT CAPITAL, LLC; WASHINGTON ECONOMIC DEVELOPMENT CAPITAL II, LLC; EVF, INC.; MOSES LAKE 96000 BUILDING LLC; SUN BASIN ORCHARDS, LLC; PIA, LLC; JOHN CHEN; TOM CHEN; BOBBY CHEN; and HEIDI CHEN, | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission ("the Commission") alleges:

## SUMMARY OF THE ACTION

1.      Defendants Andy Shin Fong Chen ("Chen") and Aero Space Port International Group, Inc. ("ASPI") (collectively, "Defendants") fraudulently raised over $14.5 million from investors in exchange for securities comprising membership interests in Washington Economic Development Capital III, LLC ("EDC III").

2.      Defendants falsely represented that investor funds would be used to finance the development of a piece of property in Grant County, Washington known as the ASPI Commerce Park.

3.      Defendants also represented to the investors, who were all foreign nationals, that their investment would enable them to participate in the Employment-Based Immigration Fifth Preference Program ("EB-5") which provides a means for foreign nationals to obtain U.S.

- 1 -

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1   residency if they invest at least $500,000 in a domestic project, or "Commercial Enterprise," that

2   will create or preserve a minimum number of jobs for U.S. workers.

3       4.   Contrary to these representations, Chen misappropriated virtually all of the funds

4   obtained from EDC III investors and used those funds to engage in personal stock trading, satisfy

5   margin calls, pay ASPI's operating expenses, make lease payments on a luxury automobile, fund

6   other businesses he controlled, and support other EB-5 Program Commercial Enterprises.

7       5.   Defendants also engaged in deceptive conduct in their dealings with the U.S.

8   Citizenship and Immigration Services (or "USCIS"), the agency that administers the EB-5

9   program by submitting materially misleading forms to USCIS for fiscal years 2014 through 2016

10  certifying their eligibility to participate in the EB-5 program and allowing the EDC III investors to

11  submit materially false and misleading documents to USCIS in connection with their petitions for

12  U.S. residency.

13          **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

14      6.   The Commission brings this action pursuant to Section 20 of the Securities Act of

15  1933 ("Securities Act") [15 U.S.C. § 77t] and Section 21(d) of the Securities Exchange Act of

16  1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)] to enjoin such transactions, acts, practices, and

17  courses of business, and to obtain an accounting, disgorgement, prejudgment interest, civil money

18  penalties, and such other and further relief as the Court may deem just and appropriate.

19      7.   This Court has jurisdiction over this action pursuant to Sections 20(b) and 22 of the

20  Securities Act [15 U.S.C. §§ 77t(b) and 77v] and Sections 21(d) and 27 of the Exchange Act [15

21  U.S.C. §§ 78u(e) and 78aa].

22      8.   Venue in this District is proper pursuant to Section 22 of the Securities Act [15

23  U.S.C. §§ 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the acts

24  or transactions constituting the violations alleged herein occurred within the District and

25  Defendants are found, reside, or transact business in this District.

26      9.   Assignment to the Seattle Division is appropriate because certain of the events

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1    giving rise to the claim occurred in King County, Washington.

2                                    **DEFENDANTS**

3         10.    **Andy Shin Fong Chen**, 51, resides in Bellevue, Washington and is ASPI's

4    President.

5         11.    **Aero Space Port International Group, Inc.** is a Washington State corporation

6    headquartered in Renton, Washington that operates a Regional Center participating in USCIS's

7    EB-5 Program; the Regional Center is also named ASPI.  ASPI manages (or has managed) at least

8    seven EB-5 Commercial Enterprises.  ASPI also engages in non-EB-5 business primarily related

9    to Chen's family's real estate holdings.  ASPI has approximately six employees, including Chen.

10   From at least 2009 to the present, Chen has been an ASPI shareholder, board member, and

11   President.  As ASPI's President, Chen is responsible for all of ASPI's strategic decisions,

12   including overall management of the entity, financial decisions, and specific projects.  Chen is the

13   sole signatory on all of ASPI's bank accounts.

14                              **RELIEF DEFENDANTS**

15        12.    The following entities and individuals are named as Relief Defendants in this action

16   for the purpose of assuring complete relief.  Each received investor money or property that was

17   obtained in violation of the federal securities laws.

18        13.    **North American Foreign Trade Zone Industries, LLC** ("NAFTZI") is a

19   Washington State limited liability company and a wholly-owned ASPI subsidiary that shares

20   ASPI's tax identification number.  NAFTZI is the developing entity of ASPI Commerce Park,

21   which is a property located in Grant County, Washington that contains commercial and industrial

22   buildings.  Chen serves as NAFTZI's president and is responsible for all of NAFTZI's strategic

23   decisions, including overall management of the entity, financial decisions, and specific projects.

24   Chen is the sole signatory on all of NAFTZI's bank accounts.

25        14.    **Washington Economic Development Capital, LLC** ("EDC I") is a Washington

26   State limited liability company and an EB-5 Commercial Enterprise under the auspices of the

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

ASPI EB-5 Regional Center.  Chen is responsible for all of EDC I's strategic decisions, including overall management of the entity, financial decisions, and specific projects.

15. **Washington Economic Development Capital II, LLC** ("EDC II") is a Washington State limited liability company and an EB-5 Commercial Enterprise under the auspices of the ASPI EB-5 Regional Center.  Chen is responsible for all of EDC II's strategic decisions, including overall management of the entity, financial decisions, and specific projects.

16. **EVF, Inc.** ("EVF") is a Washington State corporation with its principal place of business in Grant County, Washington.  Chen controls EVF.

17. **Moses Lake 96000 Building LLC** ("ML 96000") is a Washington State limited liability company and an EB-5 Commercial Enterprise under the auspices of the ASPI EB-5 Regional Center.  Chen is responsible for all of ML 96000's strategic decisions, including overall management of the entity, financial decisions, and specific projects.

18. **Sun Basin Orchards, LLC** ("Sun Basin") is a Washington State limited liability company with its principal place of business in Grant County, Washington.  ASPI owns Sun Basin.

19. **PIA, LLC** ("PIA") is a Washington State limited liability company with its principal place of business in Grant County, Washington.  Chen controls PIA.

20. **John Chen**, 80, resides in Bellevue, Washington, and is a shareholder in ASPI.  He is Andy Chen's father.

21. **Tom Chen**, 69, resides in Redmond, Washington, and is a shareholder in ASPI.  He is Andy Chen's uncle.

22. **Bobby Chen**, 64, resides in Seattle, Washington, and is a shareholder in ASPI.  He is Andy Chen's uncle.

23. **Heidi Chen**, 50, resides in Bellevue, Washington, and is employed by ASPI.  She is Andy Chen's sister.  Her married name is Heidi Shu.

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

**OTHER RELEVANT ENTITY**

24.    **Washington Economic Development Capital III, LLC** is a Washington State limited liability company and an EB-5 Commercial Enterprise under the auspices of the ASPI EB-5 Regional Center.  ASPI is the managing member of EDC III.  Chen is responsible for all of EDC III's strategic decisions, including overall management of the entity, financial decisions, and specific projects.

**FACTUAL ALLEGATIONS**

**I. Defendants Raised Over $14.5 Million From EDC III Investors Using Offering Documents Containing Material Misrepresentations and Omissions**

25.    The victims of the below-described fraud are foreign nationals who invested in securities while seeking a pathway to permanent residency in the U.S.  Under the Immigration and Nationality Act of 1990, foreign nationals may obtain U.S. residency by investing in domestic projects that will create or preserve a minimum number of jobs for U.S. workers.  Known as EB-5, this program administered by USCIS provides that foreign nationals may qualify to obtain a green card if an individual invests at least $500,000 in a Commercial Enterprise that creates or preserves at least 10 jobs for U.S. workers in a "Targeted Employment Area."

A. The Offering Documents

26.    Beginning in May 2011, Chen, through ASPI, solicited investments in EDC III from various foreign nationals.  Prior to investing, each prospective EDC III investor received three documents that described the terms of investment in EDC III: (i) a subscription agreement, power of attorney, and representation letter ("Subscription Agreement"); (ii) a Limited Liability Company Agreement of EDC III ("LLC Agreement"); and (iii) a Confidential Program Description Memorandum ("CPDM") (collectively, the "Offering Documents").

27.    Each investor who chose to participate entered into an agreement with ASPI by signing the Offering Documents.  Chen, on behalf of ASPI, countersigned in the U.S. each investor's set of these documents.

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

28.    Each investor was required to commit $500,000 in principal to EDC III to be eligible for potential residency pursuant to the EB-5 program.  Moreover, the Offering Documents made clear that potential profits were a goal and investors' funds were at risk of loss, which is a requirement of the EB-5 program.

29.    Each investor had to submit an additional fee of $30,000 to $60,000 at the same time as the investment principal.  Defendants represented in the Offering Documents that these fees would cover offering expenses, including finders' fees for the marketing agents that referred the investors to EDC III, and legal fees associated with the investments and related USCIS filings.

30.    Defendants further represented in the Offering Documents that all investor funds would be loaned to another Chen controlled entity – NAFTZI – which could use those funds only to develop and refinance various properties within ASPI Commerce Park, a piece of commercial real estate in Grant County, Washington owned by NAFTZI.

31.    The only source of potential job creation associated with the ASPI Commerce Park project was the construction of a new building in the ASPI Commerce Park complex called ASPI Commerce Park 4.

32.    Defendants also represented in the Offering Documents that NAFTZI's repayment of the loan at an annual interest rate of 3.25% would provide investors with the financial return on their investment.  ASPI was entitled to receive approximately 85% of those interest payments, while EDC III would receive the repaid loan principal and the remaining 15% of interest paid by NAFTZI.  After EDC III deducted expenses and funded a loan loss reserve account from that 15%, it would return the remaining interest, along with all investment principal, to the EDC III investors.

33.    Thus, EDC III investors invested with the expectation of reaping two potential benefits: a return of their initial investment along with NAFTZI interest payments, and permanent U.S. residency.

34.    Although the Offering Documents described limited instances in which the investors

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1  could be involved in the operation of EDC III, Defendants were ultimately responsible for the

2  success or failure of the project; any chance of a profit was thus exclusively due to Defendants'

3  efforts managing the project.

4         35.    For example, Defendants (in the LLC Agreement) described ASPI's authority as a

5  "Limited Power of Attorney" and disclosed to investors that ASPI "has the power, on behalf of

6  [EDC III], to do all things necessary or convenient to carry out the business and affairs of [EDC

7  III], as delegated by the [investors]. . . ."

8         36.    Furthermore, the majority of the investors resided abroad, and could not reasonably

9  be expected to participate in the management of a construction project in Grant County,

10  Washington.

11       B.  Defendants Obtained Approximately $16 Million in Investments and Fees for the EDC III EB-5 Project

12

13         37.    From July 2011 to February 2015, Defendants obtained approximately $14.5 million

14  from 29 investors for investment in the development of ASPI Commerce Park.  Defendants also

15  obtained approximately $1.8 million in purported administrative fees from these 29 investors.

16         38.    The funds from these investors were transferred to bank accounts in the name of

17  EDC III located in the U.S.  Chen was the sole signatory on all of these accounts.

18  **II. Defendants Used the EDC III Investor Funds in Ways that Were Not Permitted by the Offering Documents and that Were Never Disclosed to Investors**

19

20         39.    Contrary to Defendants' representations to investors, Chen misappropriated at least

21  $15.3 million received from EDC III investors to benefit himself, his family, other investors in

22  other EB-5 projects, and his other businesses unrelated to the EB-5 program.

23         40.    Chen controlled numerous bank accounts – in the names of ASPI, EDC III, NAFTZI,

24  his other non-EB-5 business interests, and the other EB-5 Commercial Enterprises he managed –

25  into which he deposited and transferred investor funds raised for EDC III.  Chen commingled the

26  funds in these accounts and frequently used EDC III investor funds for purposes inconsistent with

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1    Defendants' representations to investors, such as to pay personal, family, and non-EDC III

2    business expenses.

3        41.    As described further below, Defendants engaged in deceptive conduct by executing

4    numerous, multi-step transactions to commingle EDC III investor funds with funds from their

5    other business interests, thereby masking the true sources of the funds.

6        A.    Chen Transferred EDC III Investor Funds to an ASPI Brokerage Account to Benefit
             Himself and Other Entities He Controlled

7

8        42.    From April 2012 to late June 2012 Chen transferred a total of $1.65 million of EDC

9    III investor funds to a TD Ameritrade brokerage account in ASPI's name ("ASPI TD account").

10   The ASPI TD account included margin trading and check-writing features.  Chen was the only

11   authorized person on the ASPI TD account and had sole trading authority in it.

12       43.    Between April 2012 and September 2014, there were no other significant transfers or

13   deposits into the ASPI TD account.

14       44.    Chen transferred these funds in five separate transactions that masked the origin of

15   the funds.  Each time, Chen sent funds from EDC III to an ASPI bank account and then – either

16   on the same day or (on one occasion) the next day – sent the same amount from an ASPI bank

17   account to the ASPI TD account.

18       45.    Chen used these funds in a manner that was contrary to the Defendants'

19   representations to investors and without any disclosure to investors.

20       46.    Chen used the funds sent to the ASPI TD account for several improper purposes,

21   including to: (i) take advantage of TD Ameritrade's offering of Apple and Visa gift cards, which

22   Chen used for personal purchases; (ii) increase his ability to purchase securities, including both

23   stock and stock options, often borrowing on margin to fund his speculative trading; and (iii)

24   satisfy margin calls from TD Ameritrade.  This trading generated gains, which Chen kept for

25   himself and entities he controlled.

26       47.    For example, immediately following Chen's first transfer of EDC III investor funds

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

to the ASPI TD account in April 2012, he used the EDC III investors' funds to purchase approximately 240,000 shares of Nokia Corporation, Inc. ("Nokia").  Eight months later, in December 2012, he transferred 50,000 of these shares from the ASPI TD account to a personal brokerage account in his name.  He transferred this stock to use as collateral in order to refinance his personal mortgage.

48.    Chen transferred approximately $1.16 million of the misappropriated $1.65 million from the ASPI TD account to an EDC III bank account in two tranches in September 2013 and November 2013, and then disbursed those funds almost immediately for non-EDC III purposes. Thus, EDC III ultimately recouped none of the $1.65 million Chen sent to the ASPI TD account.

49.    From January 2014 through September 2014, Chen withdrew almost $2.7 million from the ASPI TD account, proceeds that he generated only through his misappropriation of the EDC III funds.

50.    Chen sent those proceeds directly from the ASPI TD account to bank accounts in his own name, including on at least one occasion to pay for Chinese New Year celebrations, and in the names of three entities he controlled that were not related to EDC III, namely:

- Moses Lake 96000 Building, LLC, which was another Commercial Enterprise in the EB-5 program that Chen operated; and

- PIA, LLC and EVF, Inc., which are two Chen family businesses that do not participate in the EB-5 program.

51.    Thus, in a little less than two and a half years, Chen paid out over $2.7 million to himself and various related parties, much of it in profits made by speculating with EDC III investor money.

B. Chen Used EDC III Investor Funds to Pay ASPI Corporate Expenses

52.    ASPI was entitled to only a portion of NAFTZI's interest payments on the loan of EDC III investor funds.  Nevertheless, in 2012 and 2013, Chen  misappropriated approximately $1.4 million from EDC III to pay for the following ASPI corporate expenses:

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

- Approximately $975,000 for payroll payments to ASPI employees;

- Approximately $295,000 for dental and health insurance payments for ASPI employees; and

- Approximately $160,000 for ASPI credit card payments.  These payments included monthly payments for corporate cards held by ASPI board members and employees and covered items such as food and transportation expenses.

53.    Given that all of ASPI's Board of Directors and four of its six employees – including his sister, Heidi Chen – were Chen's family members, the vast majority of these expenses ultimately benefited Andy Chen and his family.

54.    Chen used these funds in a manner that was contrary to the Defendants' representations to investors and without any disclosure to investors.

C.    Chen Used More EDC III Investor Funds to Benefit Himself, His Family, and Related Entities

55.    Chen misappropriated an additional approximately $1.7 million in EDC III investor funds to benefit himself, his family, and related entities.  Specifically:

- In 2012 and 2013, Chen transferred a total of approximately $620,000 directly from EDC III accounts to another Chen-owned business, EVF.  As noted earlier, Chen also sent EDC III investor funds from the ASPI TD account to EVF.

- Again in 2012 and 2013, Chen used approximately $465,000 of EDC III investor funds he sent to ASPI to make payments to ASPI's board, which consisted of Chen, his father John Chen, and his uncles Tom Chen and Bobby Chen.

- Between 2012 and 2015, Chen transferred approximately $415,000 of EDC III investor funds to Sun Basin Orchards, LLC, an orchard owned by ASPI.

- In March 2012, Chen loaned $150,000 of EDC III investor funds to his cousin, who used the funds to refinance his personal mortgage.

- In 2012 and 2013, Chen used $14,000 of EDC III investor funds to lease a BMW

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1    automobile.  Chen used the BMW for personal and professional purposes, and it was

2    available to his wife, friends and relatives for their personal use.

3    56.   Chen used these funds in a manner that was contrary to the Defendants'

4    representations to investors and without any disclosure to investors.

5    D.  Chen Improperly Used the Remainder of EDC III Funds for Other Purposes

6    57.   Chen used the remainder of the EDC III investor funds in two other improper ways.

7    First, although Chen transferred some EDC III funds to NAFTZI, he used none of those funds to

8    develop ASPI Commerce Park 4.  Second, Chen transferred EDC III investor funds to two other

9    ASPI EB-5 Commercial Enterprises, EDC I and EDC II, to create the EB-5 required jobs for the

10   investors in those projects seeking U.S. residency.

11   58.   Chen used these funds in a manner that was contrary to Defendants' representations

12   to investors and without any disclosure to investors.

13   i.    NAFTZI Transfers

14   59.   As described earlier, all EDC III investor funds had to be loaned to NAFTZI for the

15   development of ASPI Commerce Park.

16   60.   Chen however, sent less than half of the EDC III investor funds he received to

17   NAFTZI; from 2011 through 2015, he transferred only approximately $7 million in EDC III

18   investor funds to NAFTZI.  Moreover, none of these funds were used to develop ASPI Commerce

19   Park 4.

20   61.   Indeed – while the building on ASPI Commerce Park 4 has been completed – Chen,

21   through NAFTZI, disbursed all of the EDC III investor funds NAFTZI received long before

22   construction on ASPI Commerce Park 4 began in the fall of 2015.

23   ii.   Transfers to EDC I and EDC II

24   62.   Between 2012 and 2015, Chen transferred a total of approximately $3.6 million in

25   EDC III investor funds to two other ASPI EB-5 Commercial Enterprises that he controlled – EDC

26   I and EDC II – in an effort to help those projects create the jobs they needed to secure permanent

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1   U.S. residency for other EB-5 investors.  Thus, these funds were not used to create jobs for EDC

2   III investors.

3   **III. Materially False or Misleading Statements Made to USCIS**

4        63.   Defendants' material misstatements and omissions and other deceptive conduct were

5   not directed at only the EDC III investors; they engaged in similarly deceptive conduct with

6   respect to USCIS.

7        64.   To receive conditional residency in the U.S. while they sought their green cards

8   through the EB-5 program, the EDC III investors were required to petition USCIS and request

9   those residency benefits.  In connection with those petitions, Defendants represented in the CPDM

10  that they would review the EDC III investors' petitions before submission to USCIS to ensure that

11  they accurately described the EDC III project.

12       65.   Indeed, the CPDM stated: "[ASPI] shall be provided advanced copies of any

13  application or petition submitted to USCIS on the [investor's] behalf by the [investor] directly or

14  through its immigration counsel so [ASPI] and [EDC III] *can confirm that the information and*

15  *evidence about the description and performance of [EDC III] contained therein is accurate*."

16  (Emphasis added).

17       66.   Yet, despite Defendants' above representations, every EDC III investor submitted

18  petitions to USCIS containing copies of the Offering Documents that Defendants knew or were

19  reckless in not knowing were materially false and misleading as a result of their misconduct.

20       67.   Defendants never disclosed to USCIS the facts necessary to describe how they were

21  actually using EDC III investor funds.   These omissions allowed ASPI to remain in the EB-5

22  program and solicit additional funds from future immigrant investors.

23       68.   Defendants also directly submitted materially misleading annual reports to USCIS on

24  USCIS' Form I-924A to demonstrate continued eligibility to participate in the EB-5 program.

25  Chen signed each of the I-924A forms on ASPI's behalf.

26       69.   In particular, Chen, on ASPI's behalf, signed I-924As for fiscal years 2014, 2015,

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1    and 2016 in which Defendants failed to disclose to USCIS how Defendants had actually disbursed

2    EDC III investor funds.

3          70.    By submitting materially misleading I-924As to USCIS, Defendants were able to

4    continue their participation in the EB-5 program and solicit additional funds from at least one

5    EDC III investor.

6    **IV. Defendants Made Materially False and Misleading Statements, Failed to Disclose**
     **Material Facts, and Engaged in Other Deceptive Conduct**
7

8          71.    Defendants' representations that they, and NAFTZI, would use EDC III investors'

9    funds to create jobs that could support applications for permanent U.S. residency were materially

10   false and misleading because Chen used investors' money to benefit himself, his family, and his

11   other businesses.

12         72.    Moreover, Defendants misled investors by failing to disclose to investors the

13   material facts of how the funds were actually used.  Defendants never informed investors that

14   their investments were, in fact, used to engage in personal stock trading, satisfy margin calls, pay

15   ASPI's operating expenses, make lease payments on a luxury automobile, fund other businesses

16   Chen controlled, and support other EB-5 Commercial Enterprises.

17         73.    Defendants also engaged in deceptive conduct to disguise the misappropriation of

18   investors' funds.  Defendants misappropriated the EDC III investor funds in secret, and executed

19   numerous, multi-step transactions to commingle EDC III investor funds with funds from their

20   other business interests, masking the true sources of the funds.

21         74.    Defendants also allowed every EDC III investor to submit petitions to USCIS that

22   contained materially false descriptions of the EDC III project and made their own materially

23   misleading statements to USCIS, which enabled ASPI to remain in the EB-5 program and solicit

24   additional funds from immigrant investors.

25   **V. Defendants Acted With Scienter**

26         75.    Defendants knowingly or recklessly obtained funds from the EDC III investors by

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1  virtue of their material misrepresentations and/or omissions.  Even though they first misused EDC

2  III investor funds no later than April 2012, Defendants knowingly or recklessly continued to

3  represent to new EDC III investors and to USCIS, and to allow investors to repeat those

4  representations to USCIS, that investor funds would be used only for the purposes described in the

5  Offering Documents.  After April 2012, 22 individuals invested in EDC III.

6       76.   Defendants knowingly or recklessly failed to disclose to any EDC III investors or

7  USCIS that the EDC III investor funds were being used in a manner that violated EB-5

8  requirements and jeopardized the investors' chances of obtaining permanent U.S. residency.

9       77.   Defendants knowingly or recklessly engaged in deceptive conduct that made it more

10  difficult to detect the misappropriation of investor funds by commingling investor money with

11  other funds and moving it through multiple bank accounts.

12       78.   Defendants knowingly or recklessly engaged in deceptive conduct by failing to

13  disclose material facts necessary to make their communications with USCIS not misleading,

14  fraudulently maintaining eligibility in the EB-5 program and further endangering investors'

15  returns and their ability to obtain U.S. residency.

16  **VI. The Commission's Action is Timely**

17       79.   On September 22, 2016, Defendants entered into an agreement with the Commission

18  tolling from September 16, 2016 through March 16, 2017 any statute of limitations applicable to

19  the conduct and claims alleged herein, including any sanctions or relief that may be imposed.  The

20  tolling agreement has been in place continuously since it was entered.

21  **FIRST CLAIM FOR RELIEF**<br>**(Violations of Section 10(b) of the Exchange Act**

22  **and Rule 10b-5 Thereunder)**

23  **(All Defendants)**

24       80.   Paragraphs 1 through 79 are re-alleged and incorporated by reference as though fully

25  set forth herein.

26       81.   By engaging in the conduct described above, Defendants, knowingly or recklessly, in

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

connection with the purchase or sale of securities, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

      (a)     employed devices, schemes, or artifices to defraud;

      (b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

      (c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

      82.    By engaging in the foregoing conduct, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF
### (Violations of Section 17(a)(1) of the Securities Act)
### (All Defendants)

      83.    Paragraphs 1 through 79 are re-alleged and incorporated by reference as though fully set forth herein.

      84.    By engaging in the conduct described above, Defendants knowingly or recklessly, in the offer or sale of securities, by use of means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

      85.    By reason of the foregoing, Defendants violated Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)].

## THIRD CLAIM FOR RELIEF
### (Violations of Section 17(a)(2) of the Securities Act)
### (All Defendants)

      86.    Paragraphs 1 through 79 are re-alleged and incorporated by reference as though fully set forth herein.

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

87.   By engaging in the conduct described above, Defendants, acting at least negligently, in the offer or sale of securities, by use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

88.   By reason of the foregoing, Defendants violated Section 17(a)(2) of the Securities Act [15 U.S.C. §77q(a)(2)].

**FOURTH CLAIM FOR RELIEF**
**(Violations of Section 17(a)(3) of the Securities Act)**
**(All Defendants)**

89.   Paragraphs 1 through 79 are re-alleged and incorporated by reference as though fully set forth herein.

90.   By engaging in the conduct described above, Defendants, acting at least negligently, in the offer or sale of securities, by use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon a purchaser of securities.

91.   By reason of the foregoing, Defendants violated Section 17(a)(3) of the Securities Act [15 U.S.C. §77q(a)(3)].

**FIFTH CLAIM FOR RELIEF**
**(Relief Defendants)**

92.   Paragraphs 1 through 79 are re-alleged and incorporated by reference as though fully set forth herein.

93.   The Relief Defendants, NAFTZI; EDC I; EDC II; EVF; ML 96000; Sun Basin; PIA; John Chen; Tom Chen; Bobby Chen; and Heidi Chen, each received investor money or property,

- 16 -

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438

1   which was obtained in violation of the federal securities laws.

2       94.   The Relief Defendants have no legitimate claim to such money or property or the

3   fruits derived therefrom.

4                               **<u>PRAYER FOR RELIEF</u>**

5           WHEREFORE, the Commission respectfully requests that this Court enter a final

6   judgment as follows:

7                                     **I.**

8           An order requiring Defendants to prepare a sworn accounting of all the money they have

9   obtained from investors, including (1) a report on the disposition and current location of the

10  money, and (2) disclosure of all bank and brokerage account numbers where they deposited the

11  money.

12                                    **II.**

13          An order permanently enjoining Defendants, as appropriate, their agents, servants,

14  employees, attorneys, and all persons in active concert or participation with them who receive

15  actual notice of the injunction by personal service or otherwise, and each of them, from future

16  violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the

17  Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

18                                    **III.**

19          An order permanently enjoining Defendants from future participation in USCIS's EB-5

20  program.

21                                    **IV.**

22          An order requiring Defendants to pay civil penalties pursuant to Section 20(d) of the

23  Securities Act [15 U.S.C. § 20(d) and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

24                                    **V.**

25          An order directing Defendants and Relief Defendants to disgorge amounts equal to the funds

26  and benefits obtained illegally as a result of the violations alleged, plus prejudgment interest on

---

Complaint                                            Securities and Exchange Commission
SEC v. Chen, et al.                                                 100 F Street NE
Case No.                                              Washington, DC 20549
                                                     Telephone: (202) 551-4438

that amount.

## VI.

Granting such other and further relief as this Court may determine to be just and necessary.

### JURY DEMAND

The Commission demands trial by jury.


Dated:    March 15, 2017

Respectfully submitted,

By: *John D. Worland Jr.*

JOHN D. WORLAND, JR.
(Conditionally Admitted
Pursuant to Local Rule 83.1)

Of Counsel

GREGORY N. MILLER
MARC E. JOHNSON
GEORGE J. BAGNALL

worlandj@sec.gov
millerg@sec.gov
johnsonma@sec.gov
bagnallg@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F. Street, NE
Washington D.C. 20549

Complaint
SEC v. Chen, et al.
Case No.

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4438