THE HONORABLE JAMES L. ROBART

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ANDY SHIN FONG CHEN AND AERO SPACE
PORT INTERNATIONAL GROUP, INC.

Defendants, and

NORTH AMERICAN FOREIGN TRADE ZONE
INDUSTRIES LLC, WASHINGTON ECONOMIC
DEVELOPMENT CAPITAL LLC,
WASHINGTON ECONOMIC DEVELOPMENT
CAPITAL II LLC, EVF  INC., MOSES LAKE
96000 BUILDING LLC,  SUN BASIN
ORCHARDS LLC, PIA LLC, JOHN CHEN, TOM
CHEN, BOBBY CHEN, and HEIDI CHEN,

Relief Defendants.

No. 2:17-cv-00405-JLR
[PROPOSED] PRETRIAL ORDER

## JURISDICTION

Plaintiff alleges that jurisdiction is vested in this court by virtue of Section 20(b) and

22 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77v] and Sections

21(d) and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e)

and 78aa].  Plaintiff further alleges that venue is proper pursuant to Section 22 of the

Securities Act [15 U.S.C. §§ 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa],

because certain of the acts or transactions constituting the violations alleged in the Plaintiff

Securities and Exchange Commission's ("SEC") Complaint occurred within the Court's

jurisdiction and Defendants are found, reside, or transact business within the Court's

jurisdiction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

     Defendants reserve objection to jurisdiction because many of the acts, actions and transactions alleged in the Complaint occurred outside of the United States, depriving plaintiff of jurisdiction over those acts, actions and transactions.  Specifically, investments were solicited from foreign nationals through transactions which occurred primarily outside of the United States with the assistance of brokers and attorneys unrelated to defendants.

**CLAIMS AND DEFENSES**

**Claims for The Plaintiff**

The SEC charges Defendants with fraudulently raising over $14.5 million from investors in exchange for securities comprising membership interests in Washington Economic Development Capital III, LLC ("EDC III"); falsely representing that investor funds would be used to finance the development of a piece of property in Grant County, Washington known as the ASPI Commerce Park; representing to investors, who were all foreign nationals, that their investments would enable them to participate in the Employment-Based Immigration Fifth Preference Program ("EB-5") which provides a means for foreign nationals to obtain U.S. residency if they invest at least $500,000 in a domestic project or "Commercial Enterprise," located in a "targeted employment area," that will create or preserve a minimum number of jobs for U.S. workers; that Defendant Chen, contrary to Defendants' representations, misappropriated funds obtained from EDC III investors and improperly used those funds to engage in stock trading, satisfy margin calls, pay ASPI's operating expenses, make disbursements to ASPI board members, cover financial obligations of other Chen family members, make lease payments on a luxury automobile, fund other businesses he controlled, and support other EB-5 Program Commercial Enterprises; and that Defendants also engaged in deceptive conduct in their dealings with the U.S. Citizenship and Immigration Services (or "USCIS"), the agency that administers the EB-5 program, certifying their eligibility to participate in the EB-5 program and allowing the EDC III investors to submit materially false and misleading documents to USCIS in connection with their petitions for U.S. residency.

Consequently, the SEC will pursue the following claims against all Defendants at trial:

- First Claim:  violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

- Second Claim:  violations of Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)];

- Third Claim:  violations of Section 17(a)(2) of the Securities Act [15 U.S.C. §77q(a)(2)]; and

- Fourth Claim:  violations of Section 17(a)(3) of the Securities Act [15 U.S.C. §77q(a)(3)].

Should a jury find Defendants liable on any of the claims, the SEC will, pursuant to Section 20 of the Securities Act [15 U.S.C. § 77t] and Section 21(d) of the Exchange Act [15 U.S.C. §§78u(d)], request a remedies trial before the Court to obtain: an accounting of all the money Defendants obtained from investors, including (1) a report on the disposition and current location of the money, and (2) disclosure of all bank and brokerage account numbers where they deposited the money; an order permanently enjoining Defendants from violating the securities laws; an order permanently enjoining Defendants from future participation in USCIS's EB-5 program; an order requiring Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 20(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]; and disgorgement by Defendants and Relief Defendants of amounts equal to the funds and benefits obtained illegally plus prejudgment interest.

**Defenses and Affirmative Defenses for Defendants**

Defendants will pursue the following defenses and affirmative defenses:  Defendants deny that funds were fraudulently raised from investors in EDC III.  At all relevant times, EDC III received investor funds which were converted to a promissory note and deed of trust security interest in real property with sufficient fair market value to fully repay the contractual commitment to EDC III and to each immigrant investor.  No investor is a "victim" of fraud as alleged by plaintiff in its Complaint.  No investor has complained or pursued the myriad of

1    private remedies available to disgruntled investors pursuant to the formation documents, loan

2    documents and deed of trust.  Investors have had the opportunity to withdraw from the program

3    and some have withdrawn for reasons unrelated to any alleged fraud by defendants.  Rather,

4    withdrawing investors have been repaid through execution of the business plan.  All remaining

5    investors have executed written statements ratifying the actions of defendants and stating an

6    intent to remain in the program.

7        USCIS approved ASPI as a Regional Center; approved the EDC III program; and

8    approved I-526 petitions for 10 of the immigrant investors who presently await further

9    immigration approval.  Defendants have not engaged in deceptive conduct in dealing with

10    USCIS and have met all USCIS criteria for approval of 10 investors, which approval has not

11    been withdrawn.

12        Plaintiff cannot sustain its burden of proof in establishing violation of securities laws;

13    cannot establish scienter, negligence or recklessness.  The alleged misstatements or omissions

14    of which plaintiff complains were not material to investors.  All acts, actions and transactions

15    of defendants which are challenged by plaintiff were ratified and approved by investors.

16        Defendants have no control over the actions of USCIS processing immigrant investor

17    approvals.  Defendants made no guarantee of immigration approval.  Withdrawing investors

18    have been fully paid.  Remaining investors are fully secured and EDC III holds collateral

19    sufficient to fully repay any investor.  The project is 100% complete.

20

21

22

23

24

25

26

## ADMITTED FACTS

The following facts are admitted by the parties:

1.      Defendant Andy Shin Fong Chen ("Chen" or "Defendant Andy Chen") resides in Bellevue, Washington.

2.      Defendant Aero Space Port International Group, Inc. ("ASPI") is a Washington State corporation located in Renton, Washington.

      a.   ASPI has operated a Regional Center participating in USCIS's EB-5 Program since 1994.

      b.   ASPI's Regional Center is also named ASPI.

      c.   ASPI manages (or has managed) at least seven EB-5 Commercial Enterprises since 1994.

      d.   ASPI also engages in non-EB-5 business primarily related to Chen's family real estate holdings.

      e.   ASPI has approximately six employees.

      f.   From at least 2009 to the present, Chen has been an ASPI shareholder, board member, and its president.

      g.   As ASPI's president, Chen is responsible for all of ASPI's major decisions, including overall management of the entity, financial decisions, and specific projects.

      h.   Chen is the sole signatory on all of ASPI's bank accounts.

      i.   In November of 2009, at a meeting of ASPI's shareholders and directors, the Defendants agreed on a resolution which described how ASPI would go forward with the EB-5 program.

3.      Relief Defendant Washington Economic Development Capital, LLC ("EDC I") is a Washington State limited liability company.

  a. EDC I is an EB-5 Commercial Enterprise under the auspices of the ASPI EB-5

Regional Center.

  b. Chen is responsible for all of EDC I's strategic decisions, including overall

management of the entity, financial decisions, and specific projects.

4. Relief Defendant Washington Economic Development Capital II, LLC ("EDC

II") is a Washington State limited liability company.

  a. EDC II is an EB-5 Commercial Enterprise under the auspices of the ASPI EB-5

Regional Center.

  b. Chen is responsible for all of EDC II's strategic decisions, including overall

management of the entity, financial decisions, and specific projects.

5. Relief Defendant North American Foreign Trade Zone Industries, LLC

("NAFTZI") is a Washington State limited liability company and a wholly-owned

ASPI subsidiary that shares ASPI's tax identification number.

  a. NAFTZI is the developing entity of ASPI Commerce Park, which is a

property located in Grant County, Washington that contains commercial and

industrial buildings.

  b. Chen serves as NAFTZI's president and is responsible for all of NAFTZI's

strategic decisions, including overall management of the entity, financial decisions,

and specific projects.

  c. Chen is the sole signatory on all of NAFTZI's bank accounts.

6. Relief Defendant EVF, Inc. ("EVF") is a Washington State corporation.

  a. EVF's principal place of business is in Grant County, Washington.

  b. Chen controls EVF.

7. Relief Defendant Moses Lake 96000 Building LLC ("ML 96000") is a

Washington State limited liability company.

PRETRIAL ORDER   -7-   *SEC v. Chen*, 2:17-cv-00405-JLR

a. ML 96000 is also an EB-5 Commercial Enterprise under the auspices of the ASPI EB-5 Regional Center.

b. Chen is responsible for all of ML 96000's strategic decisions, including overall management of the entity, financial decisions, and specific projects.

8.      Relief Defendant Sun Basin Orchards, LLC ("Sun Basin") is a Washington State limited liability company.

a. Sun Basin's principal place of business is in Grant County, Washington.

b. John Chen owns Sun Basin.

9.      Relief Defendant PIA, LLC ("PIA") is a Washington State limited liability company.

a. PIA's principal place of business in Grant County, Washington.

b. Chen controls PIA.

10.     Relief Defendant John Chen resides in Bellevue, Washington

a. He is a shareholder in ASPI.

b. He is Defendant Andy Chen's father.

11.     Relief Defendant Tom Chen resides in Redmond, Washington.

a. He is a shareholder in ASPI.

b. He is Defendant Andy Chen's uncle.

12.     Relief Defendant Bobby Chen resides in Seattle, Washington.

a. Bobby Chen is a shareholder in ASPI.

b. Bobby Chen is Defendant Andy Chen's uncle.

13.     Relief Defendant Heidi Chen resides in Bellevue, Washington.

a. Heidi Chen is employed by ASPI.

b. Heidi Chen is Defendant Andy Chen's sister.

c. Heidi Chen's married name is Heidi Shu.

14.     In 1990 Congress passed the U.S. Immigration and Nationality Act which provided a special category of visa preference to individuals willing to invest $1,000,000.00 in the United States and create a minimum of ten (10) permanent jobs. The preference is commonly referred to as (Employment Based) EB-5 from its paragraph 5 enumeration in the Act.

    a.   In 1992, Congress amended the Act, creating a Pilot Program wherein investors could pool their funds into approved entities commonly referred to as Regional Centers, which would be responsible for managing the employment creating project.

    b.   The 1992 amendment also created a "rural exemption" for immigrant investors participating in Regional Centers whose projects were targeted economically depressed rural areas.

    c.   Under the "rural exemption," the investment amount was reduced to $500,000.00 per investor.

    d.   ASPI was approved as a Regional Center in 1994 and, in February of 2009, Defendants applied for and received approval from USCIS to operate its Regional Center Pilot Program as a pooled fund loan model – or "loan model" as it is commonly referred.

    e.   On June 20, 2018, USCIS served ASPI with a Notice of Intent to Terminate ("NOIT") ASPI's status as a regional center.

    f.   On July 18, 2018, Defendant Andy Chen responded to the NOIT with a letter. The letter stated, among other things, that after the Washington Economic

Development Capital III, LLC ("EDC III") had loaned the money to NAFTZI for an EB-5 project, "ASPI viewed the funds as 'working capital' and commingled the loan funds with funding from other ASPI sources."  Chen argued that as long as the loan was secured by a Deed of Trust on real property that exceeded the value of the loan, and as long as the EB-5 project was completed, this complied with USCIS requirements.

15.    EDC III is a Washington State limited liability company.

   a.  EDC III is an EB-5 Commercial Enterprise under the auspices of the ASPI EB-5 Regional Center.

   b.  ASPI is the managing member of EDC III.

   c.  Chen is responsible for all of EDC III's major decisions, including overall management of the entity, financial decisions, and specific projects.

   d.  Beginning in May 2011, various agents in China, Taiwan, and South Korea solicited investments in EDC III from various foreign nationals.

   e.  In 2011, ASPI began accepting the first Immigrant Investors into the pool for EDC III.

   f.  EDC III's purpose was to attract foreign money to invest in a project that would satisfy the requirements of the USCIS EB-5 program. The "main elements" required were:

      (1)    an investment of capital,

      (2)    in a new commercial enterprise,

      (3)    which creates jobs.

PRETRIAL ORDER                    -10-                    *SEC v. Chen,* 2:17-cv-00405-JLR

g.  Prior to submitting funding to secure status as a pending investor, each

prospective EDC III investor received three documents (collectively, the "Offering

Documents"), containing the terms of investments in EDC III:

    (1)  a subscription agreement, power of attorney, and representation letter

      ("Subscription Agreement");

    (2)  a Limited Liability Company Agreement of EDC III ("LLC

      Agreement"); and

    (3)  a Confidential Program Description Memorandum ("CPDM").

h.  Investors in EDC III purchased "pending" interests and did not become

"Members" of the LLC until receipt of I-526 status.

i.  Potential profits in the form of interest return were a goal of the EDC III project

and investors' funds were at risk of loss; otherwise the EDC III investments would

not meet the requirements for investments in the EB-5 program.

j.  Each investor was required to commit $500,000 in principal to EDC III to be

eligible for potential residency pursuant to the EB-5 program.  The Offering

Documents provided in part:

    (1)  EDC investor pooled funds were to be loaned to another Chen related

      and controlled entity – NAFTZI – which would use those funds to develop and

      refinance various properties within ASPI Commerce Park, a piece of

      commercial real estate in Grant County, Washington owned by NAFTZI.

(2) The loan to NAFTZI was originally secured by a first position Deed of Trust on the underlying ASPI Commerce Park real property including ASPI Commerce Park Buildings 1, 2, 3 and 4.

(3) Potential job creation, including direct, indirect and induced jobs, associated with the ASPI Commerce Park project would be due to the construction of a new building in the ASPI Commerce Park complex called ASPI Commerce Park 4.

(4) NAFTZI's repayment of the loan at an annual interest rate of 3.25% would provide EDC III with a financial return on its investment.

(5) ASPI was entitled to receive approximately 85% of those interest payments, while EDC III would receive the repaid loan principal and the remaining 15% of interest paid by NAFTZI.

(6) After EDC III deducted expenses and funded a loan loss reserve account from that 15%, it would return the remaining interest, along with all investment principal, to the EDC III investors.

k. Each EDC III investor paid an additional fee of $30,000 to $60,000 to cover offering expenses, including finders' fees for the marketing agents that referred the investors to EDC III, and legal fees associated with the investments and related USCIS filings.

l. Each EDC III investor entered into an agreement with ASPI by signing the Offering Documents with Chen signing on behalf of ASPI.

(1)      From July 2011 to February 2015, Defendants received $14,534,710.00

from twenty-six (26) investors for investment in the development of ASPI

Commerce Park.

    (a) $13,000,000.00 represented investors' capital and $1,534,710.00

      represented fees.

    (b)  An additional $2,060,100.00 of investors' funds was held in escrow, of

      which $2,000,000.00 represented investors' capital and $60,100.00

      represented fees.

    (c) The funds from these investors, except for the escrow sums, were

      transferred to bank accounts in the name of EDC III located in the United

      States.

    (d) Chen was the sole signatory on all of these accounts.

m.  The EDC III investor funds, not held in escrow, were transmitted to the EDC III

bank accounts by means of wire transfers.

n.  The EDC III investors did not transmit their funds until they had signed the

Subscription Agreement, the LLC Agreement, and had certified that they had read

those documents and the Confidential Program Description Memorandum.

o.  From 30 original investors, 14 have withdrawn representing investment capital

in the sum of $7 million.

p.  The total capital presently held from ten I-526 approved investors is $5 million.

q.  The total capital held for six investors denied I-526 status with appeals pending

is $3 million.  $500,000.00 from this group is held in escrow in Korea.

r.  The total loan obligation due EDC III from ASPI/NAFTZI is $7.5 million

dollars plus interest.

s.   ASPI Commerce Park 4 was constructed for Defendants by Russell Construction, Inc.

    (1)   All payments—except one—made to Russell Construction, Inc., for work on Commerce Park 4 were drawn from a Regal Financial Bank account in the name of North American Foreign Trade Zone Industries LLC.

    (2)   One payment to Russell Construction, Inc. for work on Commerce Park 4 was made from an East-West Bank account in the name of ComTech Building LLC., check number 1003 in the amount of $601,610.72.

    (3)   Periodic payments by ASPI Group/NAFTZI to Russell Construction, Inc. for work done on Commerce Park 4 were often not timely paid.  All sums due Russell Construction were paid in full and no liens were threatened or recorded.

    (4)   The total amount that ASPI Group/NAFTZI paid Russell Construction, Inc. for construction of Commerce Park Building 4 was $4,552,378.48.

t.   Of the $14,534,710.00 received from EDC III investors, $6,496,780 was used for the following purposes:

    (1)   $2,000,000 of investor funds were transferred to Moses Lake 96000, LLC (the investment project for EDC I);

    (2)   A net of $490,000 of investor funds went to the ASPI TD Ameritrade account;

    (3)   $166,538 of investor funds were transferred to ASPI's Fox Island Project;

    (4)   $149,018 of investor funds were transferred to Sun Basin, LLC;

    (5)   $118,250 of investor funds were transferred to EDC II;

(6)    $500,000 of investor funds were transferred to ASPI's Operating Account at Timberland Bank:

(7)    $76,000 of investor funds went to other transfers unrelated to EDC III;

(8)    $564,000 of investors' funds were used to fund payroll related expenses for ASPI employees;

(9)    $190,730 of investors' funds were used to pay employments benefits for health and dental insurance for ASPI's employees;

(10)    $253,806 of investors' funds were used to pay ASPI's corporate credit card expenses;

(11)    $169,000 of investors' funds were used to pay ASPI's Board members;

(12)    $29,250 of investors' funds were used to pay the financial obligations of Chen's deceased cousin, Isabel Chen, and Chen's younger brother, Tony Chen;

(13)    $12,825 of investor funds were used to pay for a BMW lease;

(14)    $540,000 of investors' funds were used to pay Jun Ping Sun ;

(15)    $966, 874 of investor funds went to pay G and L International and Rongying Wu; and

(16)    $269,988 of investor funds were transferred to ASPI and then transferred to various persons and entities which appear not to be involved in EDC III's EB-5 program.

u.   Separate from the use of $6,496,780 in investor funds described in the preceding paragraph, Mr. Chen received $2,400 worth of personal gift cards from TD Ameritrade.

v.  No EDC III funds were utilized by ASPI until after the execution of the Deed of trust and Business Loan Agreement on February 12, 2012.

## ISSUES OF LAW

**Issues for the SEC**

The following are the issues of law to be determined by the court:

1.     Whether the EDC III memberships were securities?

2.     Whether the EDC III member shares were purchased in interstate commerce?

3.     Whether the EDC III investors received the Offering Documents in connection with their purchase of EDC III shares?

4.     Whether the statements made in the Offering Documents concerning how the EDC III investor funds would be used were false and misleading, or omitted to state facts necessary to make the statements not misleading?

5.     Whether the alleged misrepresentations and omissions in the Offering Documents were material, because reasonable investors would have found Defendants' actual use of EDC III investor funds to be important to their investment decisions?

6.     Whether Defendant Andy Chen may testify as to his opinion of the requirements of USCIS, his legal interpretation of the Offering Documents, and what the EDC III investors understood?

7.     Whether the actual use of investor funds was inconsistent with the EB-5 program and threatened investors' ability to obtain Green Cards?

8.     Whether immigration lawyer Duncan Millar may present expert testimony regarding the EB-5 program and related issues without being identified by the Defendants as an expert and without being subject to expert deposition?

9.     Whether immigration lawyer Duncan Millar may present testimony regarding the EB-5 program and his representation of EDC III immigrant investors?

PRETRIAL ORDER                          -16-                    *SEC v. Chen*, 2:17-cv-00405-JLR

10.     Whether Defendants may call character witnesses to establish that their prior or otherwise unrelated business activities show an alleged lack of wrongdoing in this case?

11.     Whether Defendants may present or reference hearsay statements made by witnesses who have not been identified by name in their Rule 26 disclosures, who have been unavailable for deposition, or who do not appear at trial?

**Issues for the Defendants**

12.     Whether SEC lacks jurisdiction over acts, actions, and transactions occurring outside of the United States where investments in EDC III were solicited from foreign nationals through brokers and attorneys unrelated to defendants?

13.     Whether the secured real estate deed of trust loan transaction allowed defendants discretion on how funds were used as long as the loan was not in default?

14.     Whether plaintiff's forensic accounting expert may testify as to her opinion interpreting the meaning of the Offering Documents?

15.     Whether the Reports to Members of EDC III may be offered in evidence where these reports were made available to plaintiff prior to this lawsuit?

16.     Whether plaintiff has failed to meet its burden of proof in establishing securities law violations?

17.     Whether member ratification documents may be offered in evidence as business records?

## **EXPERT WITNESSES**

The SEC intends to call one expert at trial.

Yasmine L. Misuraca, CPA, CFE, RAICH ENDE MALTER & CO. LLP, 1375 Broadway, New York, NY 10018, who was retained and who provided a report.  Ms. Misuraca will testify as to her forensic tracing of EDC III investor funds, and her conclusions as to the amount of those funds that was not used for development of ASPI Commerce Park 4 or refurbishment, remodeling, or refinancing of the existing ASPI Commerce Park 1, 2, and 3 buildings.

## OTHER WITNESSES

The names and addresses of witnesses, other than experts, to be used by the SEC at the time of trial and the general nature of the testimony of each are:

1.   Mr. Jan Lyons, Senior Advisor (Economics), U.S. Citizenship and Immigration Services Immigrant Investor Program, 131 M Street, N.E., Mail Stop 2235, Washington, D.C.  20529, who is not retained and was not asked to prepare a report.  Mr. Lyons will testify about the EB-5 program; the EB-5 program requirements applicable to Defendants; USCIS' notices to Defendants concerning their termination from the EB-5 program; certain administrative decisions involving EDC III investors; and related USCIS issues.

2.   Defendant Andy Chen, c/o Frank R. Siderius, Esq., SIDERIUS, LONERGAN & MARTIN, 500 Union Street, Suite 847, Seattle, WA  98101.  Mr. Chen will testify about his role in the EB-5 Regional Center program involving investors in ASPI Commerce Park 4, the documents provided to those investors, and how he used funds received from investors in ASPI Commerce Park 4.

3.   Randy Coffee, G/T Investigations, Inc., 222 W. Mission Ave., Suite 110, Spokane, WA 99201.  Mr. Coffee will testify about his personal observations of the status of ASPI-related projects at Moses Lake, Washington, including ASPI Commerce Park 4.

4.   Witnesses presented on behalf of the SEC, who may testify, are:

a.   Grant Jensen, identified by the Defendants as an economist who worked on the job forecasts submitted to USCIS.

b.   Witnesses from Russell Construction to testify concerning the construction of Commerce Park 4, and any infrastructure improvements at ASPI Commerce Park.

c.   Employees of ASPI: Heidi Chen, Angela Chen, Anthony Hsu, and Sam Ku.  If called, these witnesses would testify about their contact with, and documents provided to, investors; investors' payments to EDC III, the sources of the employees' salaries; ASPI's record-keeping practices; businesses owned or managed by ASPI or other Chen family members; and Defendant Chen's supervision of his businesses.

The names and addresses of witnesses, other than experts, to be used by defendants at the of trial and the general nature of the testimony of each are:

1.  Witnesses designated by plaintiff.

2.  Duncan Millar, attorney at law, 2633 Eastlake Avenue East, Suite 300, Seattle, Washington 98102, will testify regarding his dealings with USCIS in relation to the EDC III immigrant investors he represents.

3.  Shibing Zhang, 304 Newfield Way, Peachtree, Georgia 30269.  Mr. Zhang is a EDC III investor who was interrogated and deposed by SEC prior to this lawsuit.  Mr. Zhang will testify regarding his experience as an investor with ASPI and delays in processing cause by USCIS.

4.  Pat Jones, Executive Director – Port of Chelan County, 238 Olds Station Road, Suite A, Wenatchee, Washington 98801.  Mr. Jones may testify about ASPI's reputation and development activities at the Port of Moses Lake and including the subject ASPI Commerce Park development and its value to the economic development in the area.  Mr. Jones will testify as to ASPI's lead role in attracting BMW, Fuji Chemical and various

other companies to the area and the impact said development has had on employment.  He will also provide testimony regarding ASPI's critical support for the Northern Columbia Basin Railroad project including right of way extensions.

5.  Defendants may call Grant Jensen, President, Grant Jensen & Associates, Inc., 3552 Beach Drive SW, Seattle, Washington 98116.  Mr. Jensen will provide expert testimony about the economic impact and specifically employment creation from ASPI projects and specifically, ASPI Commerce Park.  Mr. Jenson's firm has provided the independent 3rd party verification of employment creation to USCIS to support the immigration petitions of the immigrant investors in WA EDC III LLC.

6.  Defendants reserve the right to call any witness or potential witness designated by the SEC.

## **EXHIBITS**

See Appendix I of Exhibits and Objections to Authenticity and Admissibility.

## **DEPOSITION DESIGNATIONS**

Pursuant to Local Civil Rules 16(h)(7) and 32(e), the parties will submit deposition designations to the court (not filed on CM/ECF) by February 13, 2019.

## **DEMONSTRATIVES**

Demonstratives for openings and the first witness by the SEC will be exchanged at 9:00 am PST on Thursday, February 28, 2019.  Objections will be exchanged by 9:00 am PST on Friday, March 1, 2019.  Going forward, demonstratives for each succeeding day's witnesses

shall be provided by 9:00am PST the day before the witness takes the stand.  Objections to the demonstratives shall be made by 9:00 am PST on the day the witness is to testify.

## NOTIFICATION OF WITNESS ORDER

During each party's case in chief, that party shall notify the other party of the next day's witness order by 9:00 am PST the day prior to any witness taking the stand.

## ACTION BY THE COURT

1.  This case is scheduled for trial before a jury on March 4, 2019, at 9:00 a.m.

2.  Deposition designations must be submitted to the court (not filed on CM/ECF) by February 13, 2019.

3.  A pretrial conference is to be held on February 19, 2019 at 2:00 p.m.

4.  Trial briefs shall be submitted to the court on or before February 25, 2019.

5.  Jury instructions requested by either party shall be submitted to the court on or before February 25, 2019

6.  Suggested questions of either party to be asked of the jury by the court on *voir dire* shall be submitted to the court on or before February 25, 2019.

This Order has been approved by the parties as evidenced by the signatures of their counsel. This Order shall control the subsequent course of the action unless modified by a subsequent order. This order shall not be amended except by order of the Court pursuant to agreement of the parties or to prevent manifest injustice.

DATED this _____ day of _____, 2019.

_____
JAMES L. ROBART
United States District Judge

PRETRIAL ORDER                          -21-                          *SEC v. Chen,* 2:17-cv-00405-JLR

1

2

3   **FORM APPROVED**

4    By: /s/ *John D. Worland, Jr.*
    John D. Worland, Jr.
5   Gregory N. Miller
    David Mendel
6   (Conditionally Admitted
7   Pursuant to Local Rule 83.1)
    Assistant Chief Litigation Counsel
8   Securities and Exchange Commission
    100 F Street. N.E.
9   Washington, DC 20549
    (202) 551-4438
10  worlandj@sec.gov

11  *Attorneys for Plaintiff Securities and Exchange Commission*

12

13

14  **FORM APPROVED**

15  By: */s/ Frank R. Siderius*

16  Frank R. Siderius, Esq.
    SIDERIUS, LONERGAN &MARTIN
17  500 Union Street, Suite 847
    Seattle, Washington  98101
18  (206) 624-2800
    franks@sidlon.com
19

20  *Attorney for Defendants and Relief Defendants*

21

22

23

24

25

26

PRETRIAL ORDER                  -22-                  *SEC v. Chen,* 2:17-cv-00405-JLR

## <u>CERTIFICATE OF SERVICE</u>

1

2          I certify that on February 11, 2019 a copy of the foregoing Proposed Pretrial Order was

3    served upon counsel of record via the Court's electronic filing system, which sends

4    notification to:

5                                    Frank R. Siderius, Esq.
                                     SIDERIUS, LONERGAN & MARTIN
6                                    Attorney for Defendants and Relief Defendants
                                      500 Union Street, Suite 847
7                                    Seattle, WA 98101
                                     206.624.2800 work
8                                    franks@sidlon.com

9

10                                           /s/ *John D. Worland, Jr.*
                                             John D. Worland, Jr.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26