UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

    v.

ANDY SHIN FONG CHEN, et al.,

              Defendants, and

NORTH AMERICAN FOREIGN
TRADE ZONE INDUSTRIES, LLC,
et al.,

              Relief Defendants.

CASE NO. C17-0405JLR

ORDER

## I.   INTRODUCTION

Before the court are:  (1) Plaintiff Security Exchange Commission's (the "SEC")

renewed motion for entry of partial final judgment against Defendants Andy Ching Fong

Chen ("Mr. Chen") and Aero Space Port International Group, Inc. ("ASPI") (collectively,

1  "Defendants") (Renewed Mot. for Judgment (Dkt. # 106)) and (2) Defendants' motion to

2  dismiss Relief Defendants North American Foreign Trade Zone Industries, LLC

3  ("NAFTZI"), Washington Economic Development Capital, LLC ("EDC I"), Washington

4  Economic Development Capital II, LLC ("EDC II"), EVF, Inc. ("EVF"), Moses Lake

5  96000 Building LLC ("Moses Lake"), Sun Basin Orchards, LLC ("Sun Basin"), John

6  Chen, Tom Chen, Bobby Chen, and Heidi Chen (collectively, "Relief Defendants")

7  (MTD Relief Defs. (Dkt. # 114)).  Defendants oppose the SEC's renewed motion for

8  entry of final judgment.  (Def. Resp. to Renewed Mot. (Dkt. # 109).)  The SEC opposes

9  Defendants' motion to dismiss Relief Defendants.  (SEC Resp. to MTD (Dkt. # 117).)

10  The parties filed replies. (Def. Reply to MTD (Dkt. # 118); SEC Reply to Renewed Mot.

11  (Dkt. # 115).)  The court has considered the motions, the parties' submissions concerning

12  the mtoions, the relevant portions of the record, and the applicable law.  Being fully

13  advised,[1] the court (1) GRANTS in part and DENIES in part the SEC's motion for entry

14  of partial final judgment against Defendants and (2) GRANTS in part and DENIES in

15  part Defendants' motion to dismiss Relief Defendants.

## II.  BACKGROUND

17      This case is a securities enforcement action.  It arises out of Defendants' misuse of

18  the EB-5 Immigrant Investor Program ("EB-5"), which affords certain foreign investors a

19  path to permanent residency in the United States.  (*See generally* Am. Compl. (Dkt.

---

21      [1] Neither party requests oral argument (*see* Renewed Mot. for Judgment at 1; Def. Resp.
22  to Renewed Mot. at 1; MTD Relief Defs. at 1; SEC Resp. to MTD at 1), and the court finds oral
   argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

# 61); 2/15/19 Order (Dkt. # 53) at 3-5.)  Mr. Chen, through ASPI, violated federal securities laws by making material misrepresentations to foreign investors when it solicited investments in Washington Economic Development Capital III ("EDC III"),[2] the EB-5 commercial enterprise at issue in this case.  (*See* 2/15/19 Order at 21-44.)[3]

On February 15, 2019, the court granted summary judgment in favor of the SEC on its claims for misrepresentation liability based on violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and for violation of Section 17(a)(2) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a)(2).  (*See* 2/15/19 Order at 23-42.)  The court, however, denied the SEC's motion for summary judgment on its claims under Rule 10b-5(a) and (c) and Sections 17(a)(1) and (3) of the Securities Act. (*See id.* at 42-44.)  The court also granted Defendants' and Relief Defendants' motion for summary judgment with respect to Relief Defendant PIA, LLC on the ground that "the SEC has failed to allege facts supporting the court's exercise of jurisdiction over PIA." (*See id.* at 45-46.)  The court otherwise denied Defendants' and Relief Defendants' motion for summary judgment.  (*See id.* at 44-48.)

//

---

[2] EDC III is the limited liability company into which the investors deposited funds "to be eligible for potential residency pursuant to the EB-5 program."  (*See* Renewed Mot. for Judgment at 11-13; Am. Compl. ¶¶ 1-5, 25-37.)  EDC III also allegedly owns certain property for the benefit of the remaining investors, including the commercial building Commerce Park Building 3.  (Renewed Mot. for Judgment at 11-13.)

[3] The court set forth the factual background of this case in detail in its February 15, 2019 order.  (*See* 2/15/19 Order at 2-18.)  Accordingly, the court recounts here only the background that is relevant to the instant motion.

1    After the court issued its summary judgment order, the parties stipulated to allow

2    the SEC to amend its complaint.  (*See* 3/6/19 Stip. (Dkt. # 58) 1-2.)  The SEC's amended

3    complaint withdrew the SEC's claims under Rule 10b-5(a) and (c) and Section 17(a)(1)

4    and (3) of the Securities Act and removed PIA as a Relief Defendant.  (*See id.*; *see also*

5    Am. Compl.)  Accordingly, all that remained for adjudication was a determination of the

6    appropriate remedies to award the SEC on its claims under Rule 10b-5(b) and Section

7    17(a)(2) of the Securities Act against Defendants and Relief Defendants.  (*See* Mot. for

8    Judgment (Dkt. # 74) at 1-2.)

9    The parties then spent approximately six months conferring about the best way to

10   proceed.  (*See generally* 9/27/19 JSR (Dkt. # 72).)  They ultimately agreed on a proposed

11   briefing schedule for the remedies phase of this case, which the court adopted.  (*See id.*;

12   9/30/19 Order (Dkt. # 73).)  Pursuant to that schedule, the SEC filed a motion for entry of

13   final judgment against Defendants requesting disgorgement, prejudgment interest, civil

14   penalties, and permanent injunctive relief against Defendants.  (*See* Mot. for Judgment at

15   1-2.)  On March 11, 2020, the court scheduled an evidentiary hearing to resolve factual

16   disputes related to the appropriate remedies.  (*See* 3/11/20 Order (Dkt. # 85) at 3-5.)  Due

17   to the emergency created by the COVID-19 pandemic, however, the court continued the

18   evidentiary hearing at the parties' request and ordered them to file a joint status report

19   ("JSR") updating the court on any developments in the case.  (*See* 3/16/20 Order (Dkt. #

20   87) at 1.)

21   In their JSR, the parties explained that they were actively engaged in discussions

22   and information sharing regarding a potential resolution of the underlying remedies

1   dispute.  (*See* 4/17/20 JSR (Dkt. # 89) at 1-2.)  The parties requested additional time to

2   continue to investigate the feasibility of this resolution.  (*See id.*)  The court granted the

3   parties' request for additional time and struck the SEC's pending motion for entry of final

4   judgment without prejudice to refiling the motion in the event the parties could not

5   resolve the underlying issues.  (*See* 4/17/20 Order (Dkt. # 90) at 2.)

6          On May 11, 2021, the parties represented that they were unsuccessful in their

7   attempts to resolve those underlying issues and proposed a schedule for briefing a

8   renewed motion for entry of final judgment and motion to dismiss Relief Defendants.

9   (5/11/21 JSR (Dkt. # 102) at 1.)  The parties' motions are now ripe for decision.

10                          **III.   ANALYSIS**

11         The court considers the SEC's renewed motion for entry of partial final judgment

12  against Defendants before proceeding to review Defendants' motion to dismiss Relief

13  Defendants.

14  **A.      Renewed Motion for Entry of Partial Final Judgment Against Defendants**

15         The SEC requests that the court (1) enter partial final judgment against Defendants

16  pursuant to Federal Rule of Civil Procedure 54(b) and (2) order certain monetary and

17  injunctive remedies against Defendants based on its claim for misrepresentation liability.

18  (Renewed Mot. for Judgment at 2-4; *see* 2/15/19 Order at 31-42.)[4]  The parties dispute

19  whether entry of a partial final judgment against Defendants is proper, and if it is, the

20  appropriate scope of that judgment.

21

22         [4] The SEC does not seek judgment against Relief Defendants but reserves the right to do so if Defendants fail to satisfy the judgment.  (Renewed Mot. for Judgment at 2.)

1          1.  <u>Entry of Partial Final Judgment</u>

2          Federal Rule of Civil Procedure 54(b) allows a court to "direct entry of a final

3  judgment as to one or more, but fewer than all, claims or parties only if the court

4  expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

5          The court finds, in principle, that there is no just reason to delay entry of a partial

6  final judgment against Defendants on the SEC's misrepresentation liability claims and

7  with respect to those remedies that do not raise any factual dispute, as outlined below.

8  The parties have had ample time for remedies-related discovery after the court entered its

9  summary judgment order and entry of a final judgment against Defendants will allow the

10 SEC to avoid seeking judgments against Relief Defendants unless Defendants first fail to

11 satisfy the final judgment.  As discussed in more detail below, however, some of the

12 SEC's requested remedies implicate unresolved factual issues that must be resolved

13 before the court can enter partial final judgment against Defendants.

14         2.  <u>Requested Remedies</u>

15         The SEC requests that the final judgment against Defendants include

16 disgorgement, prejudgment interest, civil penalties, and injunctive relief.  (Renewed Mot.

17 for Judgment at 2-4.)  The SEC also requests that the court appoint a receiver for EDC III

18 and seeks leave to identify an appropriate receiver.  (*Id.* at 24.)  The court will discuss

19 each of the requested remedies in turn.

20             a.  *Disgorgement and Prejudgment Interest*

21         The parties dispute who is liable for disgorgement of "ill-gotten gains" and how

22 much disgorgement, if any, Defendants owe.  (*See* Renewed Mot. for Judgment at 11-16;

1    Def. Resp. to Renewed Mot. at 7-13; SEC Reply to Renewed Mot. at 1-6.)  Additionally,

2    the parties dispute whether prejudgment interest should be awarded, and if so, how much

3    interest should be awarded.  (*See* Renewed Mot. for Judgment at 16-17; Def. Resp. to

4    Renewed Mot. at 13-14.)

5          The court concludes that additional briefing is necessary to calculate the

6    appropriate amount of disgorgement to award the SEC.[5]  The briefing and evidence

7    submitted by the parties in support of and in opposition to the SEC's motion for final

8    judgment identifies factual disputes, which include the potential sale of an EDC III asset

9    and appointment of a reciver, affecting the SEC's disgorgement analysis.  (*See, e.g.*,

10   Renewed Mot. for Judgment at 13-15; SEC Reply to Renewed Mot. at 1-7, 11; Def. Resp.

11   to Renewed Mot. at 8, 10.)  For example, Defendants state in their response that

12   Commerce Park Building 3, an asset of EDC III, is under contract to be sold for $6

13   million by the end of October 2021.  (Def. Resp. to Renewed Mot. at 10; 9/7/21 Chen

14   Decl. (Dkt. # 110) ¶ 11.)  Such a sale, once completed, might affect the SEC's

15   disgorgement and prejudgment interest calculations.  (*See* SEC Reply to Renewed Mot. at

16   1-5, 11.)  Moreover, once a receiver is appointed they will be able to conduct an

17   accounting of EDC III's assets following the sale to assist the parties in preparing their

18   proposed disgorgement calculations.

19   //

20

21          [5] The court will not address the SEC's requested remedy of prejudgment interest at this
     time because prejudgment interest, if appropriate, is calculated based on the amount to be
     disgorged.  *See, e.g.*, *SEC v. Olins*, 762 F. Supp. 2d 1193, 1199 (N.D. Cal. 2011), *as amended*
22   (Feb. 25, 2011) (awarding prejudgment interest on the amount to be disgorged).

1    Because of the remaining factual disputes, the court will not address the parties'

2    arguments regarding disgorgement and prejudgment interest at this time.  Once the

3    parties resolve the remaining factual issues relating to the disgorgement calculation, the

4    SEC may file a third motion for entry of final judgment against Defendants that addresses

5    whether disgorgement and prejudgment interest are appropriate and provides proposed

6    calculations for each of those remedies.

7        *b.  Civil Penalties*

8    The Securities Act of 1933 and the Exchange Act of 1934, collectively, authorize

9    three tiers of monetary penalties for statutory violations.  *See* 15 U.S.C. § 77t(d); *id.*

10   § 78u(d)(3).  A first-tier penalty may be imposed for any violation; a second-tier penalty

11   may be imposed if the violation "involved fraud, deceit, manipulation, or deliberate or

12   reckless disregard of a regulatory requirement;" and a third-tier penalty may be imposed

13   when, in addition to meeting the second-tier requirements, the "violation directly or

14   indirectly resulted in substantial losses or created a significant risk of substantial losses to

15   other persons."  *Id.* §§ 77t(d)(2)(A)-(C); *id.* §§ 78u(d)(3)(B)(i)-(iii)).  While each tier

16   establishes a maximum penalty, the "specific amount of the civil penalty imposed within

17   each tier is discretionary."  *See SEC v. Flowers*, No. 17CV1456-JAH (JLB), 2018 WL

18   6062433, at *5 (S.D. Cal. Nov. 19, 2018).  Courts generally apply a set of factors derived

19   from *SEC v. Murphy*, 626 F.2d 633, 655-57 (9th Cir. 1980) when assessing an

20   appropriate civil penalty for securities law violations.[6]  *Flowers*, 2018 WL 6062433, at

21

22   _____

     [6] As Defendants note, some courts also apply the factors set forth in *SEC v. Haligiannis*,
     470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007) to determine the appropriate civil penalty in a case.

1   *5.  The *Murphy* factors include:  "[(1)] the degree of scienter involved; [(2)] the isolated

2   or recurrent nature of the infraction; [(3)] the defendant's recognition of the wrongful

3   nature of his conduct; [(4)] the likelihood, because of defendant's professional

4   occupation, that future violations might occur; and [(5)] the sincerity of his assurances

5   against future violations."  *Murphy*, 626 F.2d at 655-57.

6        The SEC seeks a second-tier penalty against Mr. Chen in the amount of $75,000,

7   and a second-tier penalty against ASPI of $375,000.  (Renewed Mot. for Judgment at 19.)

8   These penalties are based on the specific statutory penalty amounts that were in place

9   when the fraud commenced.  (*See id.*); 17 CFR 201.1001 (providing a chart with the

10  specific statutory penalty amounts for given years); 15 U.S.C. § 77t(d) (providing that the

11  maximum amount for a second-tier penalty "shall not exceed the greater of" a specified

12  monetary amount or the defendant's gross pecuniary gain).  The SEC selected second-tier

13  penalties because Defendants' violations were based on fraudulent misrepresentations

14  and omissions and it asserts that the *Murphy* factors support second-tier statutory

15  penalties based on a single violation for each Defendant.  (*See* Renewed Mot. for

16  Judgment at 19.)  Regarding the *Murphy* factors, the SEC alleges that:  (1) the "scienter

17  in this case was overwhelming," as discussed in the court's summary judgment order;

18  (2) Defendants conduct in this action was not isolated and the same pattern existed in all

19

20  ───────────────

21  However, the court will not assess those factors because of the similarities between those factors
    and the *Murphy* factors, and because courts within the Ninth Circuit generally consider the
    *Murphy* factors.  *See, e.g.*, *SEC v. Alpha Telcom, Inc.*, 187 F. Supp. 2d 1250, 1263 (D. Or. 2002),

22  *aff'd sub nom. SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003); *Flowers*, 2018 WL 6062433, at
    *5; *SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192 (D. Nev. 2009).

1    of ASPI's EB-5 programs; (3) Defendants have continually failed to recognize the

2    wrongfulness of their conduct; (4) future violations are likely to occur given Defendants

3    continued involvement with EDC III and opposition to the United States Citizenship and

4    Immigration Service's ("USCIS") Notice of Intent to Terminate ("NOIT") ASPI's

5    regional center's participation in the EB-5 immigrant investor program; and (5)

6    Defendants' assertion, offered as an assurance against future violations, that they do not

7    intend to initiate any new EB-5 programs lacks credibility given their failure to recognize

8    the wrongfulness of their conduct.  (*See id.* at 19-20 (citing Miller Decl. (Dkt. # 107) Ex.

9    15 ("Chen Letter")); *id.* at 20 (citing Worland Decl. (Dkt. # 37) ¶ 10, Ex. 9 ("NOIT"));

10   SEC Reply to Renewed Mot. at 7-9.)

11          Defendants make several arguments in response.  First, they argue that second-tier

12   penalties should not be awarded because "EB-5 investors were at no risk of harm, and

13   ASPI delivered what was promised."  (Def. Resp. to Renewed Mot. at 15).  Second, they

14   contend that a maximum second-tier penalty is inappropriate because they only acted

15   with "recklessness" and scienter is not "overwhelming."  (*Id.* at 16-17.)  Third, they claim

16   that there is no wrongful conduct for them to acknowledge as they "never intended to

17   defraud immigrant investors" but, rather, acted in the best interest of investors throughout

18   the EDC III project, which is now complete and has the "complete support and approval

19   of" Defendants' immigrant investors.  (*Id.* at 16-18; 9/7/21 Chen Decl. ¶¶ 4-8, 14-17.)

20   Finally, Defendants insist that there is no evidence that future violations might occur

21   because Defendants do not intend to operate new EB-5 programs and have engaged in

22

1   other successful real estate development projects.  (Def. Resp. to Renewed Mot. at 16-18;

2   9/7/21 Chen Decl. ¶¶ 4-8, 14-17.)

3          In assessing the appropriate civil penalties in this action, the court has considered

4   the *Murphy* factors in light of the totality of the circumstances and makes the following

5   findings.  First, with respect to scienter, as the court noted in its summary judgment

6   order, "any reasonable juror would conclude that Mr. Chen acted with conscious or

7   deliberate recklessness in disregarding the risk that the Offering Documents'

8   representations were false."  (2/15/19 Order at 40-42 (citing portions of the record

9   demonstrating Defendants' scienter).)  Second, Defendants' conduct was not isolated: to

10  the contrary, the USCIS found that a pattern of violations existed across all of the ASPI

11  projects financed using EB-5 investor money.  (*See* NOIT at 17.)  Third, as is apparent

12  from the filings in this case, Defendants still refuse to acknowledge the wrongful nature

13  of their conduct.  (*See, e.g.*, Def. Resp. to Renewed Mot. at 16-18; 9/7/21 Chen Decl.

14  ¶¶ 4-8, 12, 14-17, 20, 24; Chen Letter at 1-8.)  Fourth, the court finds that there is a

15  significant likelihood of future violations given Defendants' continued involvement in

16  managing EDC III, their failure to alert the SEC and the court of such involvement, and

17  the pattern of violations across all of the ASPI projects financed using EB-5 investor

18  money.  (*See* NOIT at 17; Miller Decl. ¶ 2, Ex. 1 ("Zhang Dep.") at 150:16-22; 159:07-

19  10; 190:07-10; 180:5-181:18 (demontrasting Managing Member Zhang's practice of

20  consenting to transactions and documents prepared by ASPI and NAFTZI and his

21  reliance on those entities to perform property management, rent collection, and other

22  accounting functions for EDC III); Def. Resp. to Renewed Mot. at 6 (conceding Mr.

1   Zhang delegated his management duties of EDC III "to ASPI/NAFTZI"); 9/7/21 Chen

2   Decl. ¶ 9 (noting ASPI's subsidiary NAFTZI's continued involvement with EDC III);

3   11/20/19 Chen Decl. (Dkt. # 79) ¶ 9 (promising that Defendants would no longer be

4   involved in managing EDC III).)  Fifth, Defendants' statement that "deterrence is not

5   needed" is unpersuasive in light of their refusal to acknowledge, or understand, that they

6   have done anything wrong.  (*See* Def. Resp. to Renewed Mot. at 17; 9/7/21 Chen Decl.

7   ¶¶ 4-8, 12, 14-17, 20, 24; Chen Letter at 1-8.)  Accordingly, the court finds the SEC's

8   proposed penalties, a second-tier penalty against Defendant Chen in the amount of

9   $75,000 and a second-tier penalty against Defendant ASPI in the amount of $375,000,

10  reasonable in light of the *Murphy* factors.

11      After finding that civil penalties are appropriate, the court will now turn to

12  Defendants' argument that any civil penalty should be assessed only against ASPI, and

13  not Mr. Chen, unless Defendants are found jointly and severally liable for disgorgement.

14  (Def. Resp. to Renewed Mot. at 12-13, 18.)  Because, as previously discussed, factual

15  issues bearing on the disgorgement calculation remain, the court will not address the

16  parties arguments regarding joint and several liability for disgorgement or prejudgment

17  interest at this time.  *See supra* Section III.A.2.a.  Those lingering questions do not

18  pertain to civil penalties, however, and so the court awards those against both Mr. Chen

19  and ASPI at this time.  Moreover, as the court already found Defendants liable for

20  making material misrepresentations in violation of securities laws, these civil penalties

21  are awarded against Mr. Chen and ASPI individually, as opposed to jointly and

22  severably.  (*See* 2/15/19 Order at 44.)

1           *c. Permanent Injunction*

2           "The granting or denying of injunctive relief rests within the sound discretion of

3    the trial court." *SEC v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 465 (9th Cir.

4    1985).  The Securities Act and the Exchange Act provide for the issuance of permanent

5    injunctive relief in the face of a violation of any of their provisions.  *See* 15 U.S.C.

6    § 77t(b); *id.* §§ 78u(d)(e), 78u-1.  To obtain a permanent injunction against the

7    Defendants, "the SEC ha[s] the burden of showing there [is] a reasonable likelihood of

8    future violations of the securities laws." *Murphy*, 626 F.2d at 655; *United States v. W. T.*

9    *Grant Co.*, 345 U.S. 629, 635 (1953).  In assessing the likelihood of future violations,

10   courts "must assess the totality of the circumstances" surrounding the defendants and

11   their violations and consider the *Murphy* factors discussed above.  *Murphy*, 626 F.2d at

12   655-57 (noting that "the factors are not individual prerequisites").  Evidence of "past

13   violations may give rise to an inference that there will be future violations; and the fact

14   that the defendant is currently complying with the securities laws does not preclude an

15   injunction." *Id.* at 655 (citing *SEC v. Koracorp Industries*, 575 F.2d 692, 698 (9th Cir.

16   1978)).

17          The SEC seeks to permanently enjoin Defendants from future securities law

18   violations and from further participation in the EB-5 program.  (Renewed Mot. for

19   Judgment at 21.)  The SEC argues that it has met its burden and injunctive relief is

20   appropriate because Defendants "acted with purposeful scienter, on repeated occasions

21   involving all of the ASPI EB-5 projects"; they have "never indicated any remorse" nor

22   "acknowledged their wrong-doing"; and they continue to manage and control EDC III.

(*See id.*)  Moreover, the SEC requests that a receiver be appointed for EDC III, which will ensure that EDC III is properly managed after Defendants are enjoined from further participation with the project.  (*See id.* at 22-23.)

Defendants claim that injunctive relief is unwarranted because they "have no intent to engage in any new EB-5 projects."  (Def. Resp. to Renewed Mot. at 18.)  They also argue that enjoining them from further participation in the EB-5 program "would prejudice remaining investors in EDC III and remaining investors in prior EDC projects."  (*Id.* at 19.)

The *Murphy* factors weigh in favor of granting the permanent injunctions that the SEC requests in this case.  *See Murphy*, 626 F.2d at 655-57.  First, there is significant evidence of Defendants' scienter in this case, as discussed in the court's summary judgment order.  (2/15/19 Order at 40-42 (citing portions of the record demonstrating Defendants' "conscious or deliberate recklessness").)  Second, Defendants' conduct was far from isolated.  (*See* NOIT at 17 ("[A]ll of the [projects] sponsored by the Regional Center have engaged in business practices and financial mismanagement that have undermined the ability of EB-5 investors to attain the benefits they have sought.").)  Third, Defendants have failed to acknowledge or understand the wrongful nature of their conduct.  (*See, e.g.*, Def. Resp. to Renewed Mot. at 16-18; 9/7/21 Chen Decl. ¶¶ 4-8, 12, 14-17, 20, 24; Chen Letter at 1-8.)  Fourth, the court finds that there is a significant likelihood of future violations given Defendants' failure to take responsibility for their actions, their continued involvement in the control and management of EDC III through subsidiaries, and the pattern of violations across all of the ASPI projects financed using

EB-5 investor money.  (*See* NOIT at 17; Zhang Dep. at 150:16-22; 159:07-10; 190:07-10; 180:5-181:18 (demontrasting Managing Member Zhang's practice of consenting to transactions and documents prepared by ASPI and NAFTZI and his reliance on those entities to perform property management, rent collection, and other accounting functions for EDC III); 9/7/21 Chen Decl. ¶ 9; Def. Resp. to Renewed Mot. at 6.)  Fifth, the court finds Defendants' self-serving statement that they "have no intent to engage in any new EB-5 projects" insufficient to rebut the SEC's showing of why permanent injunctions are warranted in this action.  (*See* Def. Resp. to Renewed Mot. at 17; 9/7/21 Chen Decl. ¶¶ 4-8, 12, 14-17, 20, 24; Chen Letter at 1-8; Zhang Dep. at 150:16-22; 159:07-10; 190:07-10; 180:5-181:18.)

The court agrees with the SEC's conclusion that "those who fraudulently misappropriate investor funds and deny culpability should be barred from continuing to manage the very EB-5 program they used to commit their violations."  (SEC Reply to Renewed Mot. at 10.)  Therefore, the court concludes, considering the totality of the circumstances, the that a permanent injunction preventing Defendants from engaging in future securities law violations and further participating in the EB-5 program is appropriate.

Defendants claim that enjoining them from further participation in the EB-5 program "would prejudice remaining investors in EDC III and remaining investors in prior EDC projects," but do not explain why another individual or entity could not appropriately manage such projects and protect the remaining investors.  (Def. Resp. to Renewed Mot. at 18-19.)  Indeed, if their concerns about their investors are heartfelt (*see*

1    *id.*), they will be comforted by the court's decision, discussed below, to appoint a

2    receiver, which will further ensure that the remaining EDC III investors' financial and

3    immigration interests are protected, *see infra* Section III.A.2.d.

4              d.   *Appointment of a Receiver*

5              The court has "inherent equitable authority to issue a variety of ancillary relief

6    measures in actions brought by the SEC to enforce the federal securities laws." *SEC v.*

7    *Path America LLC*, No. C15-1350JLR, 2016 WL 2865919, at *2 (W.D. Wash. July 15,

8    2016). The appointment of a receiver is among the ancillary relief that the court may

9    grant. *See Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (noting

10   that under federal law "appointing a 'receiver is an extraordinary equitable remedy'");

11   *see also SEC v. Path America LLC*, No. C15-1350JLR, 2016 WL 1588384, at *5 (W.D.

12   Wash. Apr. 20, 2016) (describing the "broad power" of courts "to determine appropriate

13   actions in the administration and supervision of an equity receivership"). Although there

14   is "no precise formula" for determining when a receiver is warranted, courts find

15   appointment proper "on a 'prima facie showing of fraud and mismanagement.'" *See*

16   *Canada Life Assur.*, 563 F.3d at 844; *Path America*, 2016 WL 1588384, at *5.

17   Moreover, courts find appointment "particularly necessary in instances where defendants

18   have allegedly defrauded members of the investing public to avoid the continued

19   diversion or dissipation of corporate assets." *See Path America*, 2016 WL 1588384, at

20   *5.

21             The SEC requests as further relief that a receiver be appointed for EDC III to

22   determine its economic viability; ensure its lawful operation; manage its assets; provide

reports to the court as to the status of the receivership entities, among other things; and establish, if necessary, a process whereby investors and non-investors may file claims against EDC III. (*See* Renewed Mot. for Judgment at 22-24.)[7]  The SEC also requests leave to identify and propose an appropriate receiver.  (*Id.*)  In light of Defendants' fraudulent misconduct and mismanagement of EDC III, the SEC argues that "it would be untenable to permit Defendants to maintain control" of EDC III's "affairs for the benefit of those shown to have been defrauded."  (*Id.*)  Moreover, the SEC argues that appointment of a receiver is especially appropriate in this case given Defendants' continued involvement in EDC III's management, their attempts "to obscure their continued control over EDC III," and the fact that the current Coordinating Member Manager of EDC III is unable to independently manage EDC III.  (*Id.*)

Defendants oppose the appointment of a receiver, and argue that a receiver is not necessary because the EDC III project has been completed; Defendants continue to act in the best interests of the remaining investors and are capable of preserving EDC III's assets; and a receiver could jeopardize "the continuing effort of the 13 remaining EDC III investors to pursue green card status."  (Def. Resp. to Renewed Mot. at 19-21.)

There has already been a "prima facie showing of fraud and mismanagement" in this case.  (*See* 2/15/19 Order at 24-44 (finding "no genuine dispute of material fact that Defendants, acting with scienter, made material misrepresentations and misleading

---

[7] The SEC alternatively requests that, if the court determines that appointment of a receiver is not appropriate, the court require Defendants to "make periodic reports" to the court "documenting EDC III's assets, remaining investors, and withdrawal and repayment activity with respect to investor."  (Renewed Mot. for Judgment at 24.)

1   omissions in connection with the sale of securities by means of interstate commerce")[8]);

2   *see also Path America*, 2016 WL 1588384, at *5.  As evidenced by the record,

3   Defendants continue to manage and control EDC III through subsidiaries like NAFTZI.

4   (*See* Def. Resp. to Renewed Mot. at 5-7 ("[Mr. Zhang's] lack of property management

5   qualifications is a reason he delegated duties to ASPI/NAFTZI."); Zhang Dep. at 94:13-

6   96:18, 150:16-22; 159:07-10; 190:07-10; 180:5-181:18; Chen Decl. ¶ 9.)  The court

7   concludes that appointment of a receiver is necessary considering Defendants' fraudulent

8   and reckless conduct, their mismanagement of the investors' money, and their continued

9   attempts to control EDC III through third parties.  Moreover, in light of the court's

10   decision to permanently enjoin Defendants from future participation in the EB-5

11   program, appointment of a receiver is necessary to ensure that the investors' assets are

12   independently controlled and preserved, to manage EDC III in the best interests of

13   investors, and to minimize the risk to the remaining investors' continued pursuit of green

14   cards.

15        Therefore, the court finds that a receiver should be appointed in this action to

16   determine the economic viability of EDC III; ensure the lawful operation of EDC III;

17   manage any assets of EDC III; provide reports to the Court as to status of the receivership

18   entities, the EDC III program, the receivership entities' business and financial activities,

19

20

21

22

---

[8] The court also concluded that the "undisputed evidence establishes that Mr. Chen failed to consult anyone with knowledge of the EB-5 program about permissible uses of investors' money; failed to accurately represent how Defendants intended to use investors' money; and failed to channel the full amount of EDC III investors' capital contributions into job-creating entities, contrary to the essential requirements of the EB-5 program."  (2/15/19 Order at 42.)

1   major assets; and establish, if necessary, a process whereby investors and non-investors

2   may file claims against EDC III.  The court grants the SEC leave to identify and to

3   propose to the Court the name of an appropriate receiver and directs the SEC to submit a

4   proposed order for the appointment of said receiver no later than November 5, 2021.

5        In sum, the court GRANTS in part and DENIES in part the SEC's motion for

6   entry of partial final judgment against Defendants.  The court agrees that partial final

7   judgment against Defendants is appropriate in principle and grants the SEC's requests for

8   civil penalties in the amount of $75,000 against Mr. Chen and $375,000 against ASPI, for

9   a permanent injunction, and to appoint a receiver.  However, in light of the remaining

10   factual issues, including the upcoming sale of Commerce Park Building 3, the court

11   denies the SEC's requests for disgorgement and prejudgment interest without prejudice

12   and declines to enter partial final judgment against Defendants at this time.  The court

13   understands that the remaining factul issues issues will be resolved in the near future and

14   DIRECTS the SEC to file its third motion for partial final judgment against Defendants

15   regarding disgorgement and prejudgment interest once the disputes are resolved.

16   **B.    Motion to Dismiss Relief Defendants**

17        The parties do not dispute that dismissal of Relief Defendants EDC I and EVF is

18   appropriate at this time.  (*See* SEC Resp. to MTD at 9; MTD Relief Defs. At 6-11.)

19   Accordingly, the court GRANTS Defendants' motion to dismiss those Relief Defendants.

20        The parties, however, dispute whether the court should dismiss Relief Defendants

21   NAFTZI, EDC II, Moses Lake, Sun Basin, John Chen, Tom Chen, Bobby Chen and

22   Heidi Chen.  Defendants request that the court dismiss the Relief Defendants because,

among other things, disgorgement has been satisfied, Relief Defendants are not "culpable

actors" or liable for underlying securities law violations, Relief Defendants are "simply

trustees, agents or depositories for the wrongdoer," and "Defendant ASPI has sufficient

assets to respond to any court ordered disgorgement or penalties." (MTD Relief Defs. at

3, 10-11.) The SEC argues that dismissal of the remaining Relief Defendants is

unwarranted because (1) disgorgement has not been satisfied; (2) *Liu v. SEC*, 140 S. Ct.

1936 (2020) does not affect the ability of the SEC to seek a judgment against Relief

Defendants here; and (3) the remaining Relief Defendants have no legitimate claim on

the misappropriated investor funds they received. (SEC Resp. to MTD at 2-9.)

The court finds that dismissal of the Relief Defendants is not appropriate at this

time because factual issues remain that prevent the court from deciding whether

disgorgement has been satisfied, as discussed above. *See supra* Section III.A.2.a. As a

result, the court declines to address the parties' arguments relating to the dismissal of the

remaining Relief Defendants. Moreover, the SEC is not currently seeking a judgment

against Relief Defendants but reserves the right to do so if Defendants fail to satisfy the

judgment. (Renewed Mot. for Judgment at 2.) If the SEC eventually decides to seek a

judgment against Relief Defendants, the parties can again raise these issues with the

court. Accordingly, the court DENIES Defendants' motion to dismiss Relief Defendants

NAFTZI, EDC II, Moses Lake, Sun Basin, John Chen, Tom Chen, Bobby Chen and

Heidi Chen without prejudice to refiling the motion in the event the SEC seeks a final

judgment against those Relief Defendants.

1

## IV.   CONCLUSION

2        For the foregoing reasons, the court:

3        (1) GRANTS in part and DENIES in part the SEC's renewed motion for entry of

4   partial final judgment against Defendants (Dkt. # 106).  The court GRANTS the SEC's

5   requests for civil penalties in the amount of $75,000 against Mr. Chen and $375,000

6   against ASPI, for a permanent injunction, and to appoint a receiver for EDC III.  The

7   court DIRECTS the SEC to submit a proposed order for the appointment of a receiver by

8   November 5, 2021.  At this time, the court DENIES the SEC's requests for disgorgement

9   and prejudgment interest.  The SEC may file a third motion for partial final judgment

10  against Defendants regarding the disgorgement and prejudgment interest remedies after

11  the remaining factual issues are resolved.  The court DIRECTS the parties to file a joint

12  status report on November 15, 2021, and on the 15th of each month thereafter until the

13  sale of Commerce Park Building 3 is complete and a receiver has been appointed.  The

14  court will not enter a partial final judgment against Defendants on any of the requested

15  remedies until it has reviewed and ruled on the SEC's third motion for partial final

16  judgment against Defendants; and

17      (2) GRANTS in part and DENIES in part Defendants' motion to dismiss Relief

18  Defendants (Dkt. # 114).  The court ORDERS that the claims against Relief Defendants

19  EDC I and EVF are hereby DISMISSED.  Defendants may renew their motion with

20  regard to the remaining Relief Defendants should the SEC eventually seek a judgment

21  against them.

22  //

Dated this 18th day of October, 2021.

JAMES L. ROBART
United States District Judge

ORDER - 22