UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

        v.

ANDY SHIN FONG CHEN, et al.,

                    Defendants, and

NORTH AMERICAN FOREIGN
TRADE ZONE INDUSTRIES, LLC,
et al.,

                    Relief Defendants.

CASE NO. C17-0405JLR

ORDER

## I.   INTRODUCTION

Before the court are:  (1) Plaintiff the Securities and Exchange Commission's (the "SEC") third motion for entry of partial final judgment against Defendants Andy Shin Fong Chen and Aero Space Port International Group, Inc. ("ASPI") (collectively,

1  "Defendants") (3d Mot. (Dkt. # 162); Reply (Dkt. # 168)); and (2) Defendants' renewed

2  motion to dismiss Relief Defendants North American Foreign Trade Zone Industries,

3  LLC ("NAFTZI"), Washington Economic Development Capital II, LLC ("EDC II"),

4  Moses Lake 96000 Building LLC ("Moses Lake"), Sun Basin Orchards, LLC ("Sun

5  Basin"), John Chen, Tom Chen, Bobby Chen, and Heidi Chen (collectively, the

6  "remaining Relief Defendants") (Resp. (Dkt. # 164)[1]).  Defendants oppose the SEC's

7  third motion for entry of partial final judgment.  (*See* Resp.)  The SEC opposes

8  Defendants' renewed motion to dismiss the remaining Relief Defendants.  (*See* Reply.)

9  The parties also filed supplemental briefing in response to the court's July 20, 2022 order.

10  (7/20/22 Order (Dkt. # 171); Defs. Surrebuttal (Dkt. # 172); Pl. Surreply (Dkt. # 178).)

11  The court has considered the submissions of the parties, the relevant portions of the

12  record, and the applicable law.  Being fully advised,[2] the court GRANTS IN PART the

13  SEC's third motion for entry of partial final judgment and DENIES Defendants' renewed

14  motion to dismiss the remaining Relief Defendants.

15                                    **II.   BACKGROUND**

16          This case is a securities enforcement action.  It arises out of Defendants' misuse of

17  the EB-5 Immigrant Investor Program ("EB-5"), which affords certain foreign investors a

18  path to permanent residency in the United States.  (*See generally* Am. Compl. (Dkt.

19

20          [1] Defendants' renewed motion to dismiss begins on page 21 of their response to the
   SEC's third motion for entry of partial final judgment.  (*See* Resp. at 2, 21.)

21          [2] Neither party has properly requested oral argument (*see* Mot. at 1; Resp. at 1), and the
   court has determined that oral argument would not be helpful to its disposition of the motion, *see*
22  Local Rules W.D. Wash. LCR 7(b)(4).

1    # 61); 2/15/19 Order (Dkt. # 53) at 3-5; 10/18/21 Order (Dkt. # 119) at 2-5.)  Defendants

2    violated federal securities laws by making material misrepresentations to foreign

3    investors when they solicited investments in Washington Economic Development Capital

4    III ("EDC III"),[3] the EB-5 commercial enterprise at issue in this case.  (*See* 2/15/19 Order

5    at 21-44.)[4]

6         On February 15, 2019, the court granted summary judgment in favor of the SEC

7    on its claims for misrepresentation liability based on violations of Section 10(b) of the

8    Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule

9    10b-5 thereunder, 17 C.F.R. § 240.10b-5; and for violations of Section 17(a)(2) of the

10   Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a)(2).  (*See* 2/15/19 Order

11   at 23-42.)  The court, however, denied the SEC's motion for summary judgment on its

12   claims under Rule 10b-5(a) and (c) and Sections 17(a)(1) and (3) of the Securities Act.

13   (*See id.* at 42-44.)  The court also granted Defendants' and Relief Defendants' motion for

14   summary judgment with respect to Relief Defendant PIA, LLC on the ground that the

15   SEC has "failed to allege facts supporting the court's exercise of jurisdiction over PIA."

16   (*See id.* at 45-46.)  The court otherwise denied Defendants' and Relief Defendants'

17   motion for summary judgment.  (*See id.* at 44-48.)

18   _____

19   [3] EDC III is the limited liability company into which the investors deposited funds "to be
     eligible for potential residency pursuant to the EB-5 program."  (*See* Renewed Mot. for
     Judgment (Dkt. # 106) at 11-13; Am. Compl. ¶¶ 1-5, 25-37.)  EDC III also allegedly owns
20   certain property for the benefit of the remaining investors.  (Renewed Mot. for Judgment at
     11-13; 11/10/21 Angela Chen Decl. (Dkt. # 123) ¶¶ 3-8.)

21   [4] The court set forth the factual background of this case in detail in its February 15, 2019
     and October 18, 2021 orders.  (*See* 2/15/19 Order at 2-18; 10/18/21 Order at 2-5.)  Accordingly,
22   the court recounts here only the background that is relevant to the instant motion.

1    After the court issued its summary judgment order, the parties stipulated to allow

2    the SEC to amend its complaint.  (*See* 3/6/19 Stip. (Dkt. # 58) 1-2.)  The SEC's amended

3    complaint withdrew the SEC's claims under Rule 10b-5(a) and (c) and Section 17(a)(1)

4    and (3) of the Securities Act and removed PIA as a Relief Defendant.  (*See id.*; *see also*

5    Am. Compl.)  Accordingly, all that remained for adjudication was a determination of the

6    appropriate remedies to award the SEC on its claims under Rule 10b-5(b) and Section

7    17(a)(2) of the Securities Act against Defendants and Relief Defendants NAFTZI,

8    Washington Economic Development Capital, LLC ("EDC I"), EDC II, EVF, Inc.

9    ("EVF"), Moses Lake, Sun Basin, John Chen, Tom Chen, Bobby Chen, and Heidi Chen.

10   (*See* Mot. for Judgment (Dkt. # 74) at 1-2.)

11   On October 16, 2019, the SEC filed a motion for entry of final judgment against

12   Defendants requesting disgorgement, prejudgment interest, civil penalties, and permanent

13   injunctive relief against Defendants, which the court later struck without prejudice to

14   refiling.  (*See id.*; 4/17/20 Order (Dkt. # 90) (striking the SEC's motion in light of the

15   "parties' representations that they are conducting further discovery on remedies and

16   exploring alternative resolutions" (citing 4/16/19 JSR (Dkt. # 89) at 1-2)).)  In August

17   2021, the SEC filed a renewed motion for entry of partial final judgment against

18   Defendants, seeking certain monetary and injunctive remedies against Defendants based

19   on its claim for misrepresentation liability.  (*See* Renewed Mot. for Judgment at 2-4.)

20   Defendants then filed a motion to dismiss Relief Defendants.  (*See* MTD (Dkt. # 114).)

21   The court granted in part and denied in part the SEC's renewed motion for entry of

22   partial final judgment and Defendants' motion to dismiss on October 18, 2021.  (*See*

10/18/21 Order at 21.)  As to the SEC's renewed motion, the court "agree[d] that partial

final judgment against Defendants [wa]s appropriate in principle" and granted the SEC's

requests for civil penalties in the amount of $75,000 against Andy Chen and $375,000

against ASPI, for a permanent injunction, and to appoint a receiver for EDC III.  (*See id.*

at 19; *see also id.* at 8-18.)  In light of remaining factual issues, including the potential

sale of an EDC III owned property and appointment of a receiver, the court denied the

SEC's requests for disgorgement and prejudgment interest without prejudice and declined

to enter a partial final judgment against Defendants at that time.  (*See id.* at 6-8, 19

(directing the SEC "to file its third motion for partial final judgment against Defendants

regarding disgorgement and prejudgment interest once the disputes are resolved").)  With

respect to Defendants' motion to dismiss, the court:  (1) dismissed Relief Defendants

EDC I and EVF; (2) declined to dismiss the remaining Relief Defendants but informed

Defendants' that they "may renew their motion with regard to the remaining Relief

Defendants should the SEC eventually seek a judgment against [those Relief

Defendants]."  (10/18/21 Order at 21; *see also id.* at 19-20.)

The SEC filed a proposed order appointing Mr. Geoffrey Winkler as Receiver for

EDC III on November 3, 2021, pursuant to the court's October 18, 2021 order.  (Prop.

Order (Dkt. # 120-2).)  Defendants objected to the SEC's proposed order appointing a

receiver and moved the court for reconsideration of its decision to appoint a receiver for

EDC III based on a change in circumstances—the sale of Commerce Park Building 3,

EDC III's "only" asset—following the court's October 18, 2021 order.  (*See* MR (Dkt.

# 122) at 3; 11/10/21 Angela Chen Decl. ¶¶ 4-6; *see also* 11/15/21 JSR (Dkt. # 125)

1    (stating that the "sale of Commerce Park Building 3 was completed on October 29,

2    2021").)  The court adopted the SEC's proposed order, appointed Mr. Winkler as the

3    receiver for EDC III, and denied Defendants' motion for reconsideration.  (*See* Receiver

4    Order (Dkt. # 130); 11/23/21 Order (Dkt. # 129) at 6-8.)  In relevant part, the court stated:

5            The court's conclusion that a receiver is warranted remains unchanged
             despite the new facts presented by Defendants.  As the court previously held,
6            appointment of a receiver is necessary considering 'Defendants' fraudulent
             and reckless conduct, their mismanagement of the investors' money, and
7            their continued attempts to control EDC III through third parties.' . . . A
             receiver will ensure the independent preservation, management, and
8            disposition of EDC III's remaining assets.

9    (11/23/21 Order at 6-8 (citations omitted).)

10           Pursuant to the terms of his appointment, the Receiver has been conducting a

11   review of the EDC III investors, the dates and amounts of their investments and fees paid,

12   and the dates and amounts of any funds already returned to investors, as well as working

13   to determine the scope of the Receivership assets.  (*See generally* 1st Rep. (Dkt. # 135);

14   2d Report (Dkt. # 154).)  The Receiver's first and second reports described these efforts;

15   stated that EDC III's sale of Commerce Park Building 3 was complete; confirmed the

16   assets collected by the Receivership estate; and provided a breakdown of the investors'

17   repayment statuses.[5]  (*See generally* 1st Rep. at 2-5; 2d Report at 2-5.)  In light of these

18   reports, the SEC "believes that the factual record is now sufficiently resolved to address

19

20   ───────────────────
     [5] The Receiver plans to prepare a liquidation plan for EDC III after the court rules on the
21   SEC's third motion for entry of partial final judgment and "disgorgement from the Defendants
     and the additional funds are received by the receivership estate," as the Receiver will then "know
22   the full extent of the assets available to the investors for distribution on claims."  (Receiver Resp.
     to MTC (Dkt. # 152) at 4.)

1  the issues of disgorgement and prejudgment interest." (*See* 3d Mot. at 2.)  Accordingly,

2  the SEC filed its third motion for entry of partial final judgment on June 1, 2022. (*See*

3  *generally id.*)

### III.    ANALYSIS

5       The court considers the SEC's third motion for entry of partial final judgment

6  against Defendants before proceeding to review Defendants' renewed motion to dismiss

7  the remaining Relief Defendants.

**A.    Third Motion for Entry of Partial Final Judgment Against Defendants**

9       In the instant motion, the SEC asks the court to enter a partial final judgment

10  against Defendants pursuant to Federal Rule of Civil Procedure 54(b) that provides as

11  follows:  (1) Defendants are permanently enjoined from further violations of the relevant

12  anti-fraud provisions, namely Section 10(b) of the Exchange Act, and Rule 10b-5(b)

13  promulgated thereunder, and Section 17(a)(2) of the Securities Act; (2) Defendants are

14  permanently enjoined from further participation in EB-5 programs; (3) Defendant Andy

15  Chen must pay a civil penalty of $75,000; (4) Defendant ASPI must pay a civil penalty of

16  $375,000; (5) Defendants are jointly and severally liable for a total disgorgement award

17  of $1,111,288; and (6) Defendants are jointly and severally liable for prejudgment

18  interest in the amount of $1,778,384.[6] (*See* 3d Mot. at 3; Prop. Final Judgment (Dkt.

19  # 168-1); *see also* 10/18/21 Order at 6, 19, 21.)  Defendants acknowledge that the entry

21  _____

[6] The SEC does not seek judgment against the remaining Relief Defendants but reserves
the right to do so if Defendants fail to satisfy the judgment.  (Reply at 12; Renewed Mot. for
Judgment at 2.)

1     of partial final judgment pursuant to Rule 54(b) is appropriate but oppose (1) the

2     disgorgement and prejudgment interest amounts put forth by the SEC and (2) a ruling of

3     joint and several liability as to Defendant Andy Chen.  (*See* Resp. at 2, 22.)

4           The court again finds that there is no just reason to delay entry of a partial final

5     judgment against Defendants on the SEC's misrepresentation liability claims pursuant to

6     Rule 54(b).  (*See* 10/18/21 Order at 6.)  Additionally, having already found the SEC's

7     requests for civil penalties in the amount of $75,000 against Andy Chen and $375,000

8     against ASPI and for a permanent injunction against Defendants appropriate (*see id.* at

9     8-16, 21), the court GRANTS the SEC's instant motion with respect to its requests for

10     civil penalties and injunctive relief.  Accordingly, the court addresses only the issues of

11     disgorgement and prejudgment interest below.

12           1.  <u>Disgorgement</u>

13           "The district court has broad equity powers to order the disgorgement of 'ill-gotten

14     gains' obtained through the violation of federal securities laws."  *SEC v. First Pac.*

15     *Bancorp*, 142 F.3d 1186, 1190 (9th Cir. 1998) (quoting *SEC v. Clark*, 915 F.2d 439, 453

16     (9th Cir. 1990)).  "Disgorgement is designed to deprive a wrongdoer of unjust

17     enrichment, and to deter others from violating securities laws by making violations

18     unprofitable."  *Id.* at 1191 (citing *Hateley v. SEC*, 8 F.3d 653, 655 (9th Cir. 1993)).  "A

19     disgorgement calculation requires only a 'reasonable approximation of profits causally

20     connected to the violation,' and the amount of disgorgement should include 'all gains

21     flowing from the illegal activities'" minus legitimate business expenses.  *SEC v. JT*

22     *Wallenbrock & Assocs.*, 440 F.3d 1109, 1113-14 (9th Cir. 2006) (first quoting *First Pac.*

1    *Bancorp*, 142 F.3d at 1192 n.6; and then quoting *SEC v. Cross Fin. Servs., Inc.*, 908 F.

2    Supp. 718, 734 (C.D. Cal. 1995)); *Liu v. SEC*, --- U.S. ---, 140 S. Ct. 1936, 1950 (2020)

3    (stating that courts "must deduct legitimate expenses before ordering disgorgement").

4    The SEC "bears the ultimate burden of persuasion that its disgorgement figure reasonably

5    approximates the amount of unjust enrichment." *SEC v. Platforms Wireless Int'l Corp.*,

6    617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First City Fin. Corp.*, 890 F.2d

7    1215, 1232 (D.C. Cir. 1989)).  If the SEC carries its burden to establish a reasonable

8    approximation of Defendants' actual profits, "the burden shifts to the defendants to

9    'demonstrate that the disgorgement figure was not a reasonable approximation.'" *See id.*

10   (quoting *First City Fin.*, 890 F.2d at 1232); *see also SEC v. Yang*, 824 F. App'x 445, 447

11   (9th Cir. Aug. 6, 2020) (applying this standard post-*Liu*).

12           The SEC initially asked the court to hold Defendants jointly and severally liable

13   for a total disgorgement award of $1,111,288, which, it alleges, "represents the amounts

14   of investor funds that (a) the [c]ourt already determined that Defendants misappropriated

15   or otherwise improperly diverted, in contravention of the offering documents that

16   Defendants provided to investors; and (b) Defendants have not already paid back to

17   investors."  (*See* Mot. at 8 (noting that "funds that Defendants already have provided to

18   the Receivership Estate are counted as having been paid back to investors, and, therefore,

19   are excluded from the tally of the amount that investors are still 'out of pocket'").)  In

20   their surrebuttal, however, Defendants argued that no disgorgement should be awarded

21   because Defendants' legitimate business expenses—legal fees, payments to USCIS,

22   referral fees, project building expenses, and other expenses under *Liu v. SEC*, 140 S. Ct.

1    1936 (2020)—exceed the amount of disgorgement initially calculated by the SEC.  (*See*

2    *generally* Defs. Surrebuttal at 2-6; 8/2/22 Angela Chen Decl. (Dkt. # 173) (providing

3    supporting documents establishing Defendants' business expenses).)  In light of

4    Defendants' established business expenses, the SEC now agrees that no disgorgement

5    should be ordered and asks only that the Receiver distribute, from the funds currently

6    held by him, the remaining six investors' initial $500,000 investments.  (*See* Pl. Surreply

7    at 2 (noting that Defendants do not object to this distribution (citing Defs. Surrebuttal at

8    6)).)  The court agrees that no disgorgement should be awarded and thus DENIES the

9    SEC's motion with respect to its request that disgorgement be awarded in the amount of

10   $1,111,288.

11          The court further agrees that the remaining six investors' initial $500,000

12   investments should be returned to them from the funds held by the Receiver.  (*See* Pl.

13   Surreply at 2; Defs. Surrebuttal at 6.)  The court will address that form of relief once it is

14   formally requested by the Receiver.  As noted in the Receiver's August 2, 2022 report,

15   the Receiver intends to seek "an order of the court allowing payment to remaining

16   investors" after the court issues its order on the instant motion and Defendants remit to

17   the Receiver whatever monetary relief they are required to pay.  (*See* 3d Report (Dkt.

18   # 174) at 5; *see also* 3/25/22 Order (Dkt. # 144) at 2 ("The deadline for the Receiver to

19   file his Liquidation Plan is hereby extended to a date thirty (30) days after SEC's third

20   motion for partial final judgment against Defendants . . . is resolved by this [c]ourt.").)

21   //

22   //

1      2. <u>Prejudgment Interest</u>

2      Whether prejudgment interest should be awarded in a case involving violation of

3 the securities laws is "confided to the district court's broad discretion." *SEC v.*

4 *Contorinis*, 743 F.3d 296, 307-08 (2d Cir. 2014) (quoting *Endico Potatoes, Inc. v. CIT*

5 *Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995)). "Prejudgment interest on

6 a disgorgement amount is intended to deprive the wrongdoer of the benefit of holding the

7 illicit gains over time by reasonably approximating the cost of borrowing such gain from

8 the government." *Id.* Therefore "[r]equiring the payment of interest prevents a defendant

9 from obtaining the benefit of what amounts to an interest free loan procured as a result of

10 illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).

11      The decision whether to award prejudgment interest is "governed by the equities,

12 reflecting 'considerations of fairness' rather than 'a rigid theory of compensation,'" and

13 "the failure of securities law violators to enjoy a profit 'does not standing alone, make it

14 inequitable to compel them to pay interest.'" *Contorinis*, 743 F.3d at 308 (first quoting

15 *Blau v. Lehman*, 368 U.S. 403, 414 (1962); and then quoting *Rolf v. Blyth, Eastman*

16 *Dillon & Co., Inc.*, 637 F.2d 77, 87 (2d Cir. 1980)); *SEC v. First Jersey Secs., Inc.*, 101

17 F.3d 1450, 1476 (2d Cir. 1996) (discussing factors courts may consider). However, "the

18 amount on which a violator must pay prejudgment interest usually tracks the amount the

19 party is ordered to disgorge [and][w]hether or not a party personally enjoyed the gains

20 from the illegal action does not alter this principle." *Contorinis*, 743 F.3d at 308. Courts

21 in the Ninth Circuit routinely order prejudgment interest in conjunction with

22 *//*

1    disgorgement awards in SEC cases, including EB-5 cases.[7]  *See, e.g.*, *SEC v. Lee*, 2015

2    WL 12751703 (C.D. Cal. Oct. 28, 2015) ("Disgorgement includes an award of

3    prejudgment interest to 'ensure that the wrongdoer does not profit from the illegal

4    activity.'" (quoting *Cross Fin. Servs.*, 908 F. Supp. at 734)); *SEC v. Hui Feng*, 2017 WL

5    6551107 (C.D. Cal. Aug. 10, 2017), *aff'd*, 935 F.3d 721 (9th Cir. 2019) ("The Court finds

6    Defendants are jointly and severally liable for disgorgement of profits in the amount of

7    $1,268,000 for commissions received by Defendants in connection with the EB-5

8    Program, and prejudgment interest in the amount of $130,517.09.")

9         The SEC asks the court to hold Defendants jointly and severally liable for

10   prejudgment interest in the amount of $1,778,384.  (Pl. Surreply at 2; *see also* Mot. at

11   14.)  "This sum represents the improper benefit that Defendants obtained by holding the

12   entire amount that they misappropriated from EDC III, $7,202,699, through the period

13   ending July 31, 2019."[8]  (Mot. at 13-14; *see also id.* at 15-17 (discussing the prejudgment

14

15        [7] The Ninth Circuit has also accepted the use of the Internal Revenue Service's tax
     underpayment rate as the appropriate interest rate in SEC disgorgement cases.  *See Platforms*

16   *Wireless*, 617 F.3d at 1099 ("The district court did not abuse its discretion by calculating
     prejudgment interest based on the tax-underpayment rate.  The SEC has adopted the tax
     underpayment rate for prejudgment interest on orders of disgorgement in all administrative

17   proceedings.").

18        [8] The SEC uses this date because it used July 31, 2019 as the "cut-off date to calculate
     prejudgment interest in its first motion for final judgment against Defendants."  (Mot. at 15

19   (citing 10/16/19 Worland Decl. (Dkt. # 76) ¶¶ 3, 4)); *see also* Mot. for Judgment at 4-7.)
     Additionally, the SEC uses $7,202,699 as the amount that Defendants misappropriated from

20   EDC III because this is the amount of investor funds that its forensic expert, Yasmine Misuraca,
     concluded that Defendants misappropriated or otherwise improperly diverted.  (*See* Mot. at 8-10
     (explaining where this number comes from); *see also* 11/13/18 Worland Decl. (Dkt. # 30) ¶ 14,

21   Ex. 13 ("Misuraca Rep."); 2/15/19 Order at 11-12, 15 (citing Ms. Misuraca's report and noting
     that $6,496,780 in EDC III investor funds were used for purposes other than the ASPI

22   Commerce Park project and $705,919 had been used for non-EDC III purposes, including

1    interest calculation); 8/23/21 Mendel Decl. (Dkt. # 108) ¶¶ 10-12, Ex. 1 (calculating

2    prejudgment interest by applying the tax-underpayment rate in 26 U.S.C. § 6621 to each

3    category of investor funds that was misappropriated or improperly diverted by

4    Defendants through July 31, 2019).)  The SEC argues that Defendants should be held

5    liable for prejudgment interest in this amount "regardless of whether misappropriated

6    funds were subsequently returned" because "Defendants benefitted from use of the

7    misappropriated funds before some (but not yet all) of the funds were returned to

8    investors."  (Reply at 9-10.)

9           Defendants seek to avoid prejudgment interest altogether or in the alternative to

10   significantly reduce the amount of interest applied.  (*See* Resp. at 15.)  Defendants argue

11   that the SEC improperly "seeks prejudgment interest on $7,202,699, nearly seven times

12   more than their proposed disgorgement based on a technical accounting of funds transfers

13   by ASPI."  (*Id.* at 16 ("[P]rejudgment interest 'usually tracks the amount that the party is

14   ordered to disgorge.'"  (quoting *Contorinis*, 743 F.3d at 308)).)  They then state that, "[i]f

15   prejudgment interest is awarded, it should be a ministerial calculation based on the

16   amount of disgorgement in the judgment."  (*Id.* at 17 & n.6 (collecting cases).)  Relying

17   on their argument that disgorgement should not be ordered here, Defendants conclude

18   that there is no amount on which prejudgment interest is to be applied.  (*Id.* at 16-17

19

20   ASPI's payroll and credit card expenses).)  Defendants do not dispute that $7,202,699 represents
     the amount that Defendants misappropriated from EDC III.  (*See generally* Resp. 16-20; 2/15/19
21   Order at 26 ("Defendants concede that Ms. Misuraca accurately traced their use of EDC III
     investors' money."  (citing Def. Mot. for Judgment Resp. (Dkt. # 39) at 8 (noting Ms. Misuraca's
     expert report on "the use of [investors'] money . . . has never been contested by defendants"), 13
22   ("Defendants have never disputed the use of funds set forth in the expert report . . . .")).)

1   (claiming that no prejudgment interest should be imposed because Defendants have paid

2   back all amounts that constitute disgorgement).)  Alternatively, Defendants argue that

3   any prejudgment interest that may be imposed should be severely limited because

4   investors' subscription agreements contained no language signifying any expectation of a

5   return on investment.  (*Id.* at 17-20 (arguing that the court should calculate prejudgment

6   interest pursuant to 28 U.S.C. § 1961, which authorizes interest on money judgments in

7   civil cases).)

8        Defendants are correct that the SEC seeks prejudgment interest based not on its

9   proposed disgorgement (*see* Mot. at 8 (seeking disgorgement in the amount of

10  $1,111,288)) but on the amount of investor funds that Defendants misappropriated and

11  held onto through July 31, 2019 (*see id.* at 14-15 ($7,202,699)).  The court further agrees

12  with Defendants that "prejudgment interest 'usually tracks the amount that the party is

13  ordered to disgorge.'"  *Contorinis*, 743 F.3d at 308.  As discussed above, no

14  disgorgement will be awarded in this case.  *See supra* III.A.1.  The SEC has not provided

15  the court with a case in which prejudgment interest was awarded without an underlying

16  disgorgement award, nor has it provided a case in which the prejudgment interest award

17  was based on something other than the disgorgement amount.  (*See generally* Mot. at

18  15-17 (citing four cases that involved disgorgement awards and prejudgment interest

19  awards based on those disgorgement amounts); Reply at 10 (citing one case that involved

20  disgorgement awards and prejudgment interest awards based on those disgorgement

21  amounts).)  Without such support, the court is unwilling to adopt the SEC's arguments

22  //

1    with respect to prejudgment interest and therefore DENIES the SEC's motion with

2    respect to its request that prejudgment interest be awarded in the amount of $1,778,384.

3    **B.    Defendants' Renewed Motion to Dismiss the Remaining Relief Defendants**

4         Defendants request that the court dismiss the remaining Relief Defendants

5    because, among other things, "Defendants have provided sufficient funding to satisfy any

6    obligation to EDC III investors" and *Liu v. SEC*, 140 S. Ct. 1936 (2020) " casts serious

7    doubt on the [c]ourt's authority to disgorge innocent parties' investment profits, even if

8    they flow from a culpable party's misconduct' where 'the SEC has not alleged any

9    pertinent wrongdoing by Relief Defendants.'"  (Resp. at 21 ("Defendant ASPI and its

10   subsidiaries own significant real estate in Grant County, Washington with a total value in

11   excess of $100 million."  (citing 12/24/18 Andy Chen Decl. (Dkt. # 40) ¶ 5)).)

12        The SEC argues that dismissal of the remaining Relief Defendants is unwarranted

13   because "Defendants have utterly failed to adequately verify that they have sufficient

14   funds at their disposal to satisfy any judgment this [c]ourt may enter against them."

15   (Reply at 12 (stating that the "evidence" supplied by Defendants to confirm ASPI's funds

16   is a citation to a three-year-old declaration that also lacks supporting documentation and

17   that "it is unlikely that a 'small family-run' business boasts assets valued at $100 million"

18   (quoting 8/23/21 Miller Decl. (Dkt. # 107), Ex. 15 ("Andy Chen Letter")))).)  The SEC

19   states that it will revisit the issue of seeking judgments against the remaining Relief

20   Defendants only if Defendants fail to satisfy their obligations under the final judgment.

21   (*Id.*)

22   //

1    The court agrees with the SEC and finds that dismissal of the remaining Relief

2    Defendants is not appropriate at this time because:  (1) Defendants have not adequately

3    verified that they have sufficient funds at their disposal to satisfy any judgment this court

4    may enter; and (2) the SEC is not currently seeking a judgment against the remaining

5    Relief Defendants.  As the court stated in its October 18, 2021 order, "[i]f the SEC

6    eventually decides to seek a judgment against [the remaining] Relief Defendants, the

7    parties can again raise these issues with the court."  (10/18/21 Order at 20.)  Accordingly,

8    the court DENIES Defendants' renewed motion to dismiss the remaining Relief

9    Defendants without prejudice to refiling the motion in the event the SEC seeks a final

10   judgment against the remaining Relief Defendants.

11                            **IV.    CONCLUSION**

12   For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART

13   the SEC's third motion for entry of partial final judgment (Dkt. # 162) and DENIES

14   Defendants' renewed motion to dismiss the remaining Relief Defendants (Dkt. # 164).

15   The court will enter a final judgment against Defendants that broadly provides as follows:

16          1.      Defendants are permanently enjoined from further violations of the relevant

17   anti-fraud provisions, namely Section 10(b) of the Exchange Act, and Rule 10b-5(b)

18   promulgated thereunder, and Section 17(a)(2) of the Securities Act;

19          2.      Defendants are permanently enjoined from further participation in EB-5

20   programs;

21   //

22   //

ORDER - 16

1    3.     Defendant Andy Chen must pay a civil penalty of $75,000 to the Receiver;[9]

2  and

3    4.     Defendant ASPI must pay a civil penalty of $375,000 to the Receiver.

4  Dated this 16th day of August, 2022.

5

6  _____

7  JAMES L. ROBART
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

   _____

22  [9] The parties agree that any monetary relief awarded against Defendants should be paid to
   the Receiver.  (*See* Mot. at 17-18; Resp. at 20.)

ORDER - 17